ANDREW LAX and others *vs.* HANS O. PETERSON, impleaded, etc.

December 24, 1889.

**Mechanic's Lien —"Lot of Land"— Entire Contract for Row of Detached Buildings on Two Contiguous Lots.**—The term "lot of land," as used in the mechanics' lien law, (Gen. St. 1878, *c.* 90, § 1,) is not limited to the particular city, town, or village lot upon which the building is erected, as bounded and described on the plat, but denotes one single parcel lying in a body, known and treated by usage or the contract of the parties as one tract.   Hence, where the owner of two contiguous town lots contracts by one entire contract for the erection of a row of houses upon them, the parties will be deemed to have connected and treated the whole as one tract.

**Same—Lien on Entire Tract—Effect of Filing Separate Liens against Each Building.**—Where labor is performed or material furnished under one entire contract for the erection of several buildings owned by the same person, and situated upon the same tract of land, a lien attaches upon the whole tract as entirety for the whole value of such labor or material.   But in such a case, if the party knows, and has the means of proving, the kind and amount of material and labor which in fact went into the construction of each building, his lien will not be lost or prejudiced by the fact that he filed a separate claim against each building for the amount of labor and material which actually entered into its construction, provided there are no third parties interested in the property whose rights would be affected.

**Same — Sufficiency of Statement for Lien by Subcontractor.**—Where a subcontractor furnishes material to the contractor of the owner of the premises, and such owner subsequently, and before the filing of the claim for a lien, sells and conveys them, the fact that the affidavit for a lien states that the contractor to whom the material was furnished was the agent and contractor of the grantee (the present owner) instead of the grantor (the former owner) will not invalidate the lien.

Lax & Nilson, Hill, Hosmer & Co., and Wheaton & Reynolds brought suits in the district court for Hennepin county, to enforce mechanics' liens against four dwelling-houses and the two contiguous lots in Minneapolis.   By consent the actions were consolidated and tried together by *Lochren,* J., who found the facts as stated in the

opinion and ordered judgment establishing and enforcing the lien in each case. The defendant Hans O. Peterson appeals from an order refusing a new trial. Hill, Hosmer & Co. and Wheaton & Reynolds filed a separate lien statement against each house and the half-lot it stands on. Lax & Nilson filed a single statement for a lien on all the houses and both the lots. Their statement was as follows:

"A. Lax and N. G. Nilson, affiants, makes oath and says that at and prior to the performance of the work hereinafter mentioned, Peter Olson was the owner and holder of a contract for deed from John Leichliter for the lots hereinafter described; that the annexed statement of contract is a true and correct account of labor performed and material furnished by A. Lax and N. G. Nilson to and for Peter Olson, at Minneapolis, in said county, and that the prices thereof set forth in the account hereto annexed are just and reasonable, and the same is unpaid except the sum of five dollars; that said labor was performed and material was furnished for said Peter Olson at the time in said contract mentioned, under and by virtue of a contract which is hereto attached, between affiants and said Peter Olson as the agent and contractor of said John Leichliter, to and for erection of certain dwelling-houses erected on the premises hereinbefore described. And affiant further makes oath and says that the said Peter Olson was, at the time said contract was entered into and said labor was performed, and said material was furnished, the owner of said dwelling-houses; and that said buildings are situate on a certain lot of land owned by said John Leichliter, described as follows: Lots numbered 7 and 8, of block numbered 2, in Merriam & Shaw's addition to Minneapolis, according to the plat thereof now on file and of record in the office of the register of deeds in and for said county; and this affiants, A. Lax and N. G. Nilson, claims a lien on said premises."

To this it was objected that it does not show the land to be in Hennepin county, nor connect Peter Olson with the property in any way that could charge the title with the alleged lien, for it does not show that Leichliter had any interest in the property; and that all the houses and both lots are included in a single claim.

The four statements of Hill, Hosmer & Co. were in the following form, each describing a different half-lot:

"W. S. Hill, affiant, makes oath and says: That during all the times herein mentioned Albert H. Hill, Lewis Hosmer, and this affiant were partners doing business under the firm name and style of

Hill, Hosmer & Company. That the annexed is a true and correct account of the labor performed and material furnished by said Hill, Hosmer & Company to and for Peter A. Peterson, in the county of Hennepin, state of Minnesota, at said county; and that the prices thereof set forth in the account hereto annexed are just and reasonable, and the same is unpaid in whole or in part; that said labor was performed and material was furnished for said Peter A. Peterson at the time in said account mentioned, under and by virtue of a contract between said Hill, Hosmer & Company and said Peterson; and during all said time said Peterson was erecting a certain dwelling-house under and pursuant to a contract in writing duly executed by said Peterson and one Peter Olson for erecting and constructing said dwelling-house, and said labor was performed and said material furnished for the erection and construction of said dwelling-house, and was used therein.

"And affiant further makes oath and says: That the said Peter Olson was, at the time said contract was entered into and said labor was performed and said material was furnished, the owner of said dwelling-house; and that said building is situate upon a certain lot of land hereinafter described; and during all said time one John Leichliter was the legal owner of said land of record, and during all said time said Olson was the equitable owner of said land by virtue of a certain contract of sale in writing, dated, duly executed and delivered, on April 18, 1887, by said Leichliter and said Olson, each to each, for a valuable consideration, and wherein said Olson agreed to build said dwelling-house and pay a price stated for said land, and said Leichliter agreed to execute and deliver to said Olson a sufficient deed of said land when said house was completed; and thereafter in due time, pursuant to said contract of sale, said Olson performed all conditions, and on behalf of said Olson and at his request said Leichliter executed said deed to one H. O. Peterson, the vendee of said Olson. Said land described as follows: The south 29 feet front and rear of lot 7 in block 2 in Merriam & Shaw's addition to Minneapolis, according to the plat thereof on file and of record in the office of the register of deeds in and for said county and state, wherein said land is situated; and this affiant claims a lien on the premises in behalf of said Hill, Hosmer & Company."

To this it was objected that Hill, Hosmer & Co.'s contract annexed to the statement was an entire contract for the four houses; and they could not divide it and the material furnished under it into four equal parts, and charge each one-fourth to each of the half-lots.

The four statements of Wheaton, Reynolds & Co. were in the following form, each describing a different half-lot:

"George A. Wheaton, affiant, makes oath and says he is a member of the firm composed of himself and Clinton A. Reynolds, partners as Wheaton, Reynolds & Co.

"That the annexed is a true and correct account of the labor performed and material furnished by his said firm, Wheaton, Reynolds & Co., to and for P. A. Peterson, agent and contractor for Hans O. Peterson, the owner of the premises below described, at said county; and the prices thereof set forth in the account hereto annexed are just and reasonable, and the same is unpaid. That said labor was performed and material was furnished for said P. A. Peterson, contractor and agent for said Hans O. Peterson, the owner of the premises below described, at the time in said account mentioned, under and by virtue of a verbal contract between said Wheaton, Reynolds & Co. and said P. A. Peterson as agent and contractor for said Hans O. Peterson, and for erecting a certain dwelling-house for said Hans O. Peterson upon said premises. And affiant further makes oath and says: That the said Hans O. Peterson was, at the time said contract was entered into and said labor was performed and said material was furnished, the owner of said premises; and that said building is situate upon a certain lot of land owned by said Hans O. Peterson, in said county of Hennepin and state aforesaid, described as follows, to wit: The south half of lot No. 7, in block 2, in Merriam & Shaw's addition to Minneapolis, Minnesota, according to the plat thereof now on file and of record in the office of the register of deeds within and for said county and state. And said Wheaton, Reynolds & Co. claim a lien on the premises."

To this the same objection was made as to the statements of Hill, Hosmer & Co., and the further objection that the statement shows a contract between Peter A. Peterson and Hans O. Peterson, while the evidence showed that the contract was made between Peter A. Peterson and Peter Olson.

*Laybourn & McHugh,* for appellant.

*Gjertsen & Rand,* for Lax & Nilson, respondents.

*Wadsworth & Wadsworth,* and *Frederick B. Lathrop,* for Hill, Hosmer & Co., respondents.

*Borgholthaus & Cameron,* for Wheaton, Reynolds & Co., respondents.

MITCHELL, J. These are actions to enforce mechanics' liens. The facts, so far as material for the purposes of this appeal, are as follows: Leichliter owned two contiguous lots in the city of Minneapolis, containing less than one acre, and having an aggregate front-

age on the same street of 116 feet.   He made a contract with Olson for the sale of both lots, by the terms of which it was provided that Olson should build four houses on them.   Peter A. Peterson then contracted with Olson to furnish all the material and perform all the labor for the construction of the four houses, except the foundations, cellars, and cisterns for a gross sum.   Lax & Nilson contracted with Olson to build the foundations, cellars, and cisterns for all the houses for another gross sum.   Wheaton, Reynolds & Co. and Hill, Hosmer & Co. each sold and delivered to Peter A. Peterson building material for the construction of the houses.   The labor of Lax & Nilson was performed, and the material of Wheaton, Reynolds & Co. was furnished, each under one entire contract for the four houses; but such labor was in fact performed, and materials used, in the construction of each of the houses in equal amounts, all of the houses being substantially alike.   Although Hill, Hosmer & Co. sold all of their material on the same occasion, yet they sold a separate bill for each house, (each bill being the duplicate of the other,) and the same amount and kind of material entered into the construction of each house.   The buildings were designed for dwellings, and were all built in a row fronting on the street, one house on each half-lot, or 29 feet front, according to the recorded plat.   The houses were not contiguous, and it may be fairly inferred, from the character of the buildings, that they were designed to be used, when completed, as separate dwellings, and not as appurtenant to each other.   Hans O. Peterson, the appellant, after all these contracts for labor and material had been made, and after most of it had been performed or furnished, but before the houses were completed, purchased the whole property, receiving a warranty deed of the same from Leichliter, and a quitclaim from Olson.   Lax & Nilson filed a single claim for a lien for their entire labor against the whole property, viz., the two lots and the four houses; while Wheaton, Reynolds & Co. and Hill, Hosmer & Co. filed four separate claims for liens, each for one-fourth of their bill, and against each house separately and the half-lot on which it stood.

The first and principal question in the case is as to the correctness of the mode or manner adopted by these parties in filing their lien

claims. That Hill, Hosmer & Co. proceeded properly in filing a separate claim against each house and half-lot cannot, upon the facts, admit of serious doubt. But were Lax & Nilson entitled to a lien on the entire property for the whole value of their labor, and could Wheaton, Reynolds & Co. divide their claim, and file a separate lien on each house and half-lot? The appellant claims that they were not entitled to a single lien on the whole property for their entire claims, because the houses were not all on the same "lot," and that they were not in position to be able to divide their claims, and file separate liens, because their work or material was all performed or furnished indiscriminately under one entire contract for the four houses, and no separate account was kept of what went into each building. When the statute gives the laborer or material-man a lien upon a house, and "the *lot* of ground on which such house * * * is erected," it does not confine the lien to a particular town or city lot as bounded and described on the town or city plat, and separated from adjacent property by ideal or imaginary lines. The word "lot" merely denotes one single parcel of land lying in a body, known and treated by usage or otherwise as one tract, and as being the tract, lot, or parcel which the parties naturally understood as that which will appertain to or be connected with building or buildings after they should be erected. The preceding clause, "if erected within the limits of any city, town, or village plat," has reference merely to the subsequent limitations of area to one acre in such cases, and has no bearing upon the definition of the word "lot." If all these buildings had been designed to be used together after completion as appurtenant to each other, as in the case of barns or stables in connection with and within the curtilage of a dwelling, we apprehend that there could have been no serious doubt but that the lien of these parties would have extended to the whole premises as one lot or tract. But how have the parties to these building contracts treated the property, and not how the owner intends to use it after the completion of the houses, is the question. By contracting for the erection of these four houses under one entire contract, they have connected the two city lots and the several buildings, and treated the whole as one tract or estate.

*Wall* v. *Robinson,* 115 Mass. 429. Had the houses been contiguous, so as to form a solid block, according to all the authorities the lien would have extended to the whole property although consisting of different city lots according to the plat, and although the different parts of the block were designed to be used separately, and not as appurtenant to each other. But that case would not differ from the present unless we attach special significance to the literal reading of the statute, which uses the words "house" and "dwelling" in the singular. This would be to defeat the spirit of the law by a too strict adherence to its letter. Our conclusion is that upon the facts of this case the entire property constituted one "lot," within the meaning of the statute. Also that where labor is performed or material furnished, under an entire contract for the erection of several buildings owned by the same person, and situated upon the same lot or tract of land, a lien attaches upon the whole lot or tract, as an entirety, for the whole value of such labor or material. While decisions from other states, owing to differences in statutes, are not always strictly in point, yet we believe these views are in accord with those of the courts of almost every other state having a similar statute. Phil. Mech. Liens, *c.* 17; Kneel. Mech. Liens, *c.* 5; Jones, Liens, § 1313; *Wall* v. *Robinson, supra; Batchelder* v. *Rand,* 117 Mass. 176.

It follows that Lax & Nilson proceeded correctly in filing a single lien against the whole property. Wheaton, Reynolds & Co. might properly have done the same. It remains to consider the effect of their dividing their claim, and filing a separate lien against each house for one-fourth. It appears that in fact one-fourth the amount and value of the material furnished went into the construction of each house, just as they alleged in their claims for liens, and they had the means of establishing that fact. There are no third parties whose rights are prejudiced by the division of the claim. Had they filed a single claim for a lien against the entire property, the court, in the exercise of its equity powers, could, and in view of Hill, Hosmer & Co.'s liens doubtless would, by its decree, have divided and apportioned the amount among the four houses, as it did with the claims of Lax & Nilson, in order to protect and properly adjust the rights of all the parties. Under these facts, we do not think that Wheaton,

Reynolds & Co. prejudiced or lost their lien by dividing and apportioning it between the several houses.

In their affidavits, Wheaton, Reynolds & Co. stated that the material was furnished by them to and for Peter A. Peterson, agent and contractor for *Hans O. Peterson*, the owner of the premises. When we consider the object of filing an affidavit and statement for a lien, and the relation of the parties to the property and to these contracts, we think it will be seen that this inaccuracy of statement in the affidavit is unimportant. The office of the statement is to give notice of the claim, and not to serve as evidence of it. Where the labor is performed or material is furnished to a contractor, and not to the owner, the only object in referring to or stating the name of the latter is that it may appear that the contractor had authority from the owner to charge the property with a lien. In such a case it is not the owner personally, but his property, that is sought to be charged. In the present case it is true that the property was charged by the authority of Olson and Leichliter, who then owned it. But Hans O. Peterson, (the owner at the time the claims for liens were filed,) as their assignee or grantee, was in privity with them, and took the property subject to this charge, precisely as if it had been imposed by the authority of himself personally. Hence the affidavit, although inaccurate as a history of the transaction, really states the facts according to their legal effect, and no one examining it with reference to dealing with the property could be misled by it to his prejudice.

We have examined the numerous other assignments of error, but as they are all technical, and not substantial, we do not feel called upon to discuss them. We think none of them are well founded.

Order affirmed.