[Argued March 22, 1893; decided April 11, 1893.]

## WILLAMETTE MILLS CO. *v.* SHEA.

[S. C. 32 Pac. Rep. 759.]

MECHANICS' LIEN — NOTICE COVERING SEVERAL BUILDINGS AND LOTS — HILL'S CODE, §§ 3669, 3670, 3673.— One who, under a single contract for a stipulated sum, has performed work on, or has furnished material which was indiscriminately used in, the construction of several houses situated on adjoining lots, owned by one person, is entitled to a lien on all the houses and lots jointly, and may include them all in one notice. This is as true where each house is separate from the others, as where they are all under one roof, the test being the entirety of contract.*

Multnomah County: LOYAL B. STEARNS, Judge.

Suit in equity by the Willamette Steam Mills, a private corporation, against John F. Shea, the owner of certain lots in the City of Portland, against D. C. McDonald, the contractor for the erection of four houses on said lots, and against Dayton, Hall & Avery, who furnished to McDonald the builders' hardware used in the houses, for the foreclosure of a lien for lumber furnished to, and used by McDonald, generally in carrying out his contract.

The cause having been referred to Wm. T. Muir, Esq., he advised that the plaintiff and the Dayton firm were

---

* NOTE.— The right to file a single mechanics' lien against several buildings is the subject of a note fully collating the authorities appended to the case of *Wilcox* v. *Woodruff* ( Conn.), 17 L. R. A. 315. The Connecticut case denied the right, although, as is shown in the note, the decisions generally have upheld it within certain limits.— REPORTER.

each entitled to a lien on all the houses and lots for the material furnished, and that one notice of lien by each claimant was sufficient to cover the entire property. A decree having been entered accordingly, Shea appeals. Affirmed.

*Gilbert J. McGinn* (*Cecil H. Bauer* on the brief), for Appellant.

*Geo. G. Gammans*, for Respondent Dayton.

*Joseph Simon* (*Cyrus Dolph* and *Rufus Mallory* on the brief), for Respondent Willamette Mills.

MR. CHIEF JUSTICE LORD delivered the opinion of the court.

This is a suit brought by the plaintiff, The Willamette Steam Mills Lumbering & Manufacturing Company, against D. C. McDonald, J. F. Shea, and Dayton, Hall & Avery, as defendants, to foreclose a mechanics' lien upon lot number eight, and the north half of lot number five, in Couch's Addition to the City of Portland, the same being contiguous lots, constituting one entire tract. The facts, as found by the referee, substantially are, that the defendant J. F. Shea, being the owner of said premises, entered into a contract with the defendant D. C. McDonald, by the terms of which the said McDonald agreed, for a stipulated sum or price, to furnish the material and perform the carpenter work in the erection thereon of four separate dwelling houses. The defendant McDonald entered into a contract with the plaintiff for the lumber necessary for the building of said houses, and made a contract with the defendant firm of Dayton, Hall & Avery for the hardware required for the same. The plaintiff furnished the lumber and building material which were used in the construction of the said four houses, and upon which there was due, at the time of the commencement of this suit, the sum of seven hundred and seventy-seven

dollars and seventy-seven cents, and the defendants Dayton, Hall & Avery furnished the hardware which was used in the construction of the same, and upon which there was due at the time of the commencement of this suit the sum of one hundred and eighty-three dollars and twenty-seven cents. The building material and hardware which the defendant and Dayton, Hall & Avery furnished to D. C. McDonald were not furnished in separate quantities, but as a whole, for the several houses, to be used indiscriminately. Thereafter liens were duly and severally filed by the plaintiff and Dayton, Hall & Avery against said houses and lots as a whole.

Upon this state of facts the contention for the appellant is that a separate notice of lien should have been filed against each house to acquire a valid lien, or, in other words, that the including of four dwelling houses in one notice of lien was void. This is predicated upon the principle that our statute by its terms contemplates only a separate lien on a single building, and not a joint lien on several buildings. The language of the statute is: "Section 3669. Every mechanic * * * or other person performing labor or furnishing materials * * * to be used in the construction of any building * * * shall have a lien upon the same," etc. "Section 3670. The land upon which any building * * * shall be constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof shall also be subject to the liens created by this act," etc. "Section 3673. It shall be the duty * * * of every mechanic * * * or other person, within thirty days after the completion, * * * to file with the county clerk of the county in which such building shall be situated a claim containing a true statement of his demand," etc. As the words "building" and "land" are used in the singular, it is insisted that the lien given by the statute attaches only to the particular building

upon which the labor was performed, or for which the materials were furnished, and to so much of the "land" as may be required for the convenient use and occupation of such building; and, as a consequence, that the notice of lien, required to be given by the statute in order to acquire a valid lien, must be confined to the particular building, and the land on which it is situated, and may not include work done and materials furnished for another building upon any other land. In *Hill* v. *Braden*, 54 Ind. 77, the statute under consideration provided that "mechanics and all persons performing labor or furnishing materials for the construction or repair of any building may have a lien," and the court says: "Our mechanics' lien law by its terms contemplates only a separate lien on a single building, not a joint lien on several buildings." And again: "So far as the lien is given upon the lot or land, it is only as an incident to the lien upon the house on the lot or land, for the materials in the house; the house and lot on which it stands, the curtilage, constituting one parcel of real estate. As the mechanics' lien act contemplates only liens on separate pieces of property, so it contemplates only a notice of intention to hold a lien on a separate piece of property, including, of course, its appurtenances." This view of the statute is approved in *Wilkerson* v. *Rust*, 57 Ind. 172, and in *McGrew* v. *McCarty*, 78 Ind. 497. It proceeds upon the theory that the lien is specific,—that is, that it is confined to a particular building or structure upon which the labor was done, or for which the materials were furnished: Jones on Liens, § 1310. Mr. Phillips states the reason to be that "if the work be done or materials furnished upon distinct premises, the lien must be against each of the several premises according to the value of the work and materials incorporated in each, and not against both for the aggregate amount. The reason a joint claim may be sustained against several houses put up at the same time, without

an interval between them, is that they may be considered as one building, and consequently as an integer or unit which may be covered by one claim. But this cannot be asserted with any truth where there is an interval, however small, which prevents the whole from being one continuous structure. It has accordingly been held that a joint claim against separate blocks of houses in different streets is a nullity, and the same principle applies to different blocks on different sides, or on the same side, of the same street, and in every instance where the residence against which the claim is filed is not substantially one building": Phillips on Mechanics' Liens, § 376.

There is still another reason given in support of this rule or theory. In *McGrew* v. *McCarty*, 78 Ind. 498, ELLIOTT, C. J., says: "The theory of the law is that credit is given to the identical building for which the materials are furnished, or upon which the work is done. Each building represents a distinct or separate security; one building cannot be made to stand as the security for another. In truth, each building stands as a several debtor, and one can no more be made to discharge the debt of another building than one individual debtor can be made to pay a separate claim owing by somebody else to the same creditor. It is upon this principle that those cases may be sustained which hold that a joint claim cannot be supported by the proof of a separate right." As sustaining this view, see *Gorgas* v. *Douglas*, 6 Serg. & R. 512; *Fitzpatrick* v. *Thomas*, 61 Mo. 512; *Chapin* v. *Paper Works*, 30 Conn. 461 (79 Am. Dec. 263); *Steigleman* v. *McBride*, 17 Ill. 300; *Landers* v. *Dexter*, 106 Mass. 531; *Barker* v. *Maxwell*, 8 Watts, 478; *Simmons* v. *Carrier*, 60 Mo. 581.

But it is observable under these statutes in which the word "building" is used in the singular, and which, by reason thereof, have been construed in some jurisdictions to confine the lien to a single building, or to authorize

only a single lien against each building for which the materials were furnished, or upon which the work was done, that nevertheless such single lien may cover or include the outbuildings, as dependencies and appurtenances to the main building. In *Bank of Charleston* v. *Curtiss*, 18 Conn. 342 ( 46 Am. Dec. 325 ), a single lien was filed for work upon a dwelling house and barn and one acre of land, and it was held that the lien was valid. The theory is that the barn and other outbuildings connected with the dwelling house form one homestead. The outbuildings being dependencies, or appurtenant to the dwelling house, they were erected for a connected use, relatively as much so as the different apartments of a dwelling house, which entitles them to be considered as one structure forming one homestead. So, too, where a solid block of buildings, consisting of distinct but connected houses, and covering several lots, has been erected by the same owner at the same time, a single lien covering the whole improvement has been held valid on the ground that the entire structure was but one building. In *Brabazon* v. *Allen*, 41 Conn. 361, it was held that where a block of buildings comprising several dwelling houses, separated from one another by a partition wall, is erected upon a single lot, and work is done upon it as a whole under one entire contract, the builder's lien extends as a single lien to the whole block. FOSTER, J., said: " The plaintiffs in error insist that here are five dwelling houses, which, though contiguous to each other, are still in point of fact separate, distinct, and independent, as much so in contemplation of law, as if each stood on a lot by itself." But to this argument he answered: " We think that the plaintiffs are entitled to a lien on the building on which they had labored, and for which they had furnished materials, and on the whole building, and the land on which it stands."

It will be seen, therefore, while the plaintiffs in error

claimed that there were five dwelling houses within the intent and meaning of the statute providing for a lien against "every dwelling house or other building," the court thought and held that, within such meaning and intent, where the materials were furnished for, and the work was done on the structure as a whole, under one entire contract, there was but one building, although when completed it made five dwelling houses, separated one from another by a partition wall. We have been cited to these adjudications under statutes similar to our own as supporting the decisions of this court, and as throwing light upon the subject under discussion. The decisions of this court referred to are *The Dalles Lumber Co.* v. *Woolen Mfg. Co.* 3 Or. 527, and *Kezartee* v. *Marks*, 15 Or. 529 (16 Pac. Rep. 407). At the time the first case was decided the statute provided "that any person who shall hereafter, by virtue of any contract with the owner of any building,   *   *   * perform any labor or furnish any material for the construction or repair of such building shall, upon filing the notice prescribed, have a lien upon such building." The controversy in the case was between a mortgagee of the woolen manufactory and the plaintiff, who claimed a lien for labor and material furnished in the construction of the factory, dye house, bleach house, and dry house. The case was decided upon the sufficiency of the facts stated in the complaint, the court holding that it was *ultra vires* for a corporation organized to sell lumber to perform work and labor, and that it did not appear from the complaint how much was for labor nor how much for lumber. The argument for appellant was "that the buildings being separate and apart, the lien is properly on each building for the particular amount of lumber furnished for the same"; and the court expressed the opinion, at page 531, that the statute " confines the lien to the building constructed or repaired. This evidently refers to the particular building upon which the labor was performed, or for the construction or repair

of which the materials were furnished, and to no other."
To the claim by the respondent that the dry house, dye
house, and bleach house were as necessary to the factory
as a mill dam is to a mill, as decided in *Willamette Falls
Co.* v. *Remick*, 1 Or. 170, the court answered: "Whether
these outbuildings are as necessary to carry on the busi-
ness of a factory as a mill dam is to a mill, the court is
not advised.  There is one thing certain, which appears
from the pleadings in this case, that these outbuildings
are separate and distinct from the main factory."  It is
clear, however, if the court had been advised that the out-
buildings were used in connection with the factory for a
common purpose, and were as necessary to the factory as
a mill dam is to a mill, it would not have affected its con-
clusions, since in view of the facts that these outbuildings
were separate from the factory building, and the statute,
in its opinion, confined the lien to a single building, there
could not be a lien on the factory building and its out-
buildings.  We think this is doubtful, even though the
construction that the statute confines the lien to a single
building be correct.  A single lien upon separate buildings
is allowed when they are erected for any common purpose
or connected use, as in the case of barns, stables, and other
outhouses used in connection with, and within the curtil-
age of a dwelling, or where the buildings have been
erected for some general and connected use: *Lindsay* v.
*Gunning*, 59 Conn. 296 (22 Atl. Rep. 310); *Willamette Falls
Co.* v. *Remick*, 1 Or. 170.  These outbuildings were essen-
tial to the use of the factory, and connected with it for a
common purpose, and, upon analagous principles, ought to
be considered under the statute in the light of all the
authorities as a part of the factory or its dependencies.

The case at bar, however, is distinguishable from *The
Dalles Lumber Co.* v. *Woolen Mfg. Co.*, in that it does not
appear in the latter case (1) that the materials were
furnished under one entire contract; (2) nor that the build-

ings were situated on the same tract of land, or on contiguous lots. In *Kezartee* v. *Marks*, 15 Or. 529 (16 Pac. Rep. 407), it was held to be a fatal objection to the lien that it included materials used in the repair of the house, as well as the construction of the fence. This case is also distinguishable from the case at bar in that (1) it does not there appear that the materials were furnished under one entire contract, or even under one contract; (2) nor that there was anything in common between the house and fence, except that they were on the same donation land claim. But while the case at bar is distinguishable from those cases, indicating that the question presented by the record, namely, whether a single lien for materials furnished to, or work done on, several houses as a whole, under an entire contract for a stipulated sum, is valid, has not been directly decided; yet there is no doubt that the trend of these decisions is adverse to its validity. They are predicated upon the idea that the statute contemplates that the lien should be confined to a single building, as indicated by the use of the word "building," and for the reason that credit is only given to such "building" for the materials furnished or the labor done upon it; and, consequently, that a single lien cannot be made to cover several buildings. But certainly too great importance ought not to be attached to the use of the word "building," in view of the fact that a like use of the singular in the statutes of many other states has been no bar to an adverse conclusion. The statutes are set out in Jones on Liens, volume 2, sections 1184, 1133; and the cases to which we shall refer have all been decided under statutes like our own, which use the singular rather than the plural. These cases hold, where the contract is entire, that the lien attaches to the buildings and the land as a whole. They proceed upon the principle that where labor and materials are furnished in the erection of several buildings upon contiguous lots, under an entire contract with the owner,

the lien attaches to the buildings for all the materials and labor furnished.

In *Wall* v. *Robinson*, 115 Mass. 429, the contract was for labor performed in the erection of three dwelling houses and one stable upon the same lot, and the contractors were to receive one hundred and forty dollars for each house, and thirty dollars for the stable. The lien was held valid, the court saying: "In the case at bar the petitioners have performed labor upon several buildings situated upon the same lot, under an entire contract, and for an entire price. We think such a case is within the purpose of the statute and the intention of the legislature. The parties by their contract have connected the several buildings, and treated them as one estate. Under the contract the labor performed on each building creates a lien upon the whole lot, and therefore upon all the other buildings. Although it cannot be said with strict accuracy that the labor for which the lien attaches was all performed on each building affected by it, yet it was all performed on one estate, and to deny the lien would defeat the spirit of the statute by a too literal adherence to its letter.  *  *  *  We are of opinion that when labor is performed or furnished under an entire contract, in the erection or repair of several buildings owned by the same person, and situated upon the same lot, a lien attaches upon the whole estate for the whole value of the labor performed, if the other conditions of the statutes are fulfilled." To the same effect is *Batchelder* v. *Rand*, 117 Mass. 176, where ENDICOTT, J., holds that the facts that the land was conveyed in separate lots, and the buildings were separate, one standing on each lot, do not affect the principle upon which *Wall* v· *Robinson* was decided.

In *Doolittle* v. *Plenz*, 16 Neb. 153 (20 N. W. Rep. 116), where A. erected three houses for B., one upon each of three adjoining lots, for an entire sum, it was held that the lien attached to all the lots and the buildings thereon.

XXIV. OR.— 4.

In *Lax* v. *Peterson*, 42 Minn. 221 (44 N. W. Rep. 3), four houses were built separately on the same tract of land, under an entire contract, and it was held that the lien extended to the whole premises as an entirety. Mitchell, J., said: "But how have the parties to the building contracts treated the property, and not how the owner intends to use it after the completion of the houses, is the question. By contracting for the erection of these four houses under one entire contract, they have connected the two city lots and the several buildings, and treated the whole as one tract or estate. Had the houses been contiguous, so as to form a solid block, according to all the authorities the lien would have extended to the whole property, although consisting of a different city lots according to the plat, and although the different parts of the block were designed to be used separately, and not as appurtenant to each other. But that case would not differ from the present unless we attach special significance to the literal reading of the statute, which uses the words 'house' and 'dwelling' in the singular. This would defeat the spirit of the law by a too strict adherance to its letter": *Glass* v. *St. Paul Sleigh Co.* 43 Minn. 222 (45 N. W. Rep. 150), follows *Lax* v. *Peterson*. In *Pennock* v. *Hoover*, 5 Rawle, 291, the right of a joint lien upon several houses, the property of the same person, was upheld under a statute which provided that "every dwelling house or building shall be subject to the payment of the debts contracted" for building it. This case presents an interesting discussion of the use of the words in the statute, "every dwelling house or other building," as showing that they may include more than one building. To the same effect is *Phillips* v. *Gilbert*, 101 U. S. 721, where a joint lien was claimed on six houses and lots in the city of Washington, under an act of congress which gave a lien upon complying with certain conditions therein. The validity of the lien was contested on the ground that the claim of lien was void

because made in gross upon six separate lots, without specifically setting forth the amount claimed upon each lot. The court held there was nothing in this objection, Mr. Justice BRADLEY, saying: "The contract was one, and related to all the buildings as an entirety, and not to the particular buildings separately. The whole row was one building, within the meaning of the law, from having been erected by the parties on one contract, as one general piece of work."

In *Carr* v. *Hooper*, 48 Kan. 253 (29 Pac. Rep. 398), it was held, where work and material were furnished in the erection of five buildings upon a single lot, under an entire contract with the owner, that the lien attaches to the lot and buildings for all the materials and labor furnished. In *Sergent* v. *Denby*, 87 Va. 206 (12 S. E. Rep. 402), two houses were built on opposite sides of the street for an entire price, and the lien claimed was on both houses and lots. The defense was that the lien was void because the lien given by the statute is a separate and distinct lien on each building for the amount of the materials actually delivered for construction. The lien was held valid. In *Fullerton* v. *Leonard*, 52 N. W. Rep. 325, the facts are somewhat similar to the case at bar, except that the two lots upon which the buildings were erected belonged to separate individuals who joined in the contract. A sub-contractor furnished materials to be used in the erection of all the buildings, under an entire contract with the builder. The question was whether a joint lien could be enforced against two separate properties owned by different individuals, based upon a single account of lumber and materials furnished to both upon a joint contract. The court held that the lien could be enforced against all the buildings and the two lots; that the contract was to govern, and that the buildings, having been united in one contract, must be regarded as one piece of work. The court says: " It is true that the several lots or parcels of land were not owned

by the same person, but we can perceive no distinction in principle between a case where several lots are owned by one person, or where the lots are owned by different owners, as it is not so much the different ownership, as it is the contract upon which the work is to be performed, that is to determine whether the lien must be joint or several. A joint lien upon several buildings situated upon different lots owned by the same persons could not be maintained where a separate contract had been entered into by the owner and contractor; for by the several contract the inference would be that a separate account should be kept with each building. Not so when the contract covered several buildings to be erected for a gross amount without regard to the cost of each. So, if two or more several owners of lots or parcels of land wish to jointly contract for the erection of several buildings, to be situated upon the several pieces for a definite and specific sum in gross for all, without regard to the cost of either one, a joint lien may be asserted upon all for any balance due for the erection of such buildings. The contract with the parties has no reference to the separate ownership, and no inference can be drawn from it that a separate account shall be kept with each building, or each person interested in the contract." It is true that a lien is a creation of the statute, but its foundation is in the contract. If the contract is to control and it treats the property as a whole, there can be no substantial reason why the lien may not cover it. In such case, the contract relates to no particular building, but treats them as a whole, though they are, in point of fact, separate and distinct buildings.

As we have seen there are some authorities which hold that where several houses are built together in one block, under an entire contract, the lien extends as a single lien to the whole block, but that they refuse to so hold when the buildings are separate and distinct. It does not seem to us there is any sound basis for this distinction, for

the reason that houses so constructed in a block are always treated as separate buildings, and are owned and sold as such, as fully as though wholly disconnected.   There is no reason, whether the buildings are comprised in one block, or are in fact separate and distinct from each other, when constructed upon adjoining lots constituting one tract, if the contract is. entire and treats them as a whole, why a single lien should not attach, in either case, to the entire land and buildings upon it.   There is nothing definite in the statute which indicates the number of buildings that may be covered by a lien.   While we have required those who would receive the benefit of the statute to comply with its positive requirements in order to acquire a valid lien, *Gordon* v. *Deal,* 23 Or. 153 (31 Pac. Rep. 287), *Nicolai Bros.* v. *Van Fridagh,* 23 Or. 149 (31 Pac. Rep. 288), we think a more liberal rule should prevail as to those parts of the statute less definite, which, to rigorously enforce, would deprive the claimant of its benefits.   It can be a matter of no importance to the defendant Shea, who is owner of the entire property, whether he pays the entire debt as a single lien upon all the buildings, or as four separate liens.   So far as notice is concerned, the single lien would answer that purpose as well as if they were separate.   By the contract the buildings and land are united and treated as one structure.   The materials were furnished and used indiscriminately in all the houses,— no separate accounts were kept,—the buildings were carried along together through the several stages of construction—they were situated upon contiguous lots, and belonged to the same owner.   If the plaintiffs have no lien against the four houses as a whole, they have no lien at all, for they have furnished no particular materials for any particular house.   As a consequence, the estate of the defendant Shea would have the benefit of their materials, and the plaintiffs would be deprived of their lien.   If we can fairly avoid it, no such construction ought to be put

upon our statute as would lead to this result. To uphold the lien does not conflict with the decision in *Kezartee* v. *Marks*, but only its reasoning. But for the reason suggested, that case may well and rightly stand upon its facts.

The question presented by this record has not hitherto been before this court, in consideration of which, and our own decisions, we have been induced to carefully examine the different adjudications and the reasoning by which they are supported, with the result that under the facts herein the liens attach to the lands and the houses as a whole. It follows that there was no error, and that the decree must be AFFIRMED.

---

[Argued March 28; decided April 17; rehearing denied June 12, 1893.]