## COLONIAL TRUST CO. v. VALE-OREGON IRR. CO. et al.

(District Court, D. Oregon. May 10, 1920.)

No. 7841.

1. **Mechanics' liens 🔑168—Date from beginning of building or improvement.**
   Under L. O. L. § 7418, giving a mechanic's or contractor's lien precedence of a mortgage recorded after the building or improvement was commenced, or the commencement of delivery of materials on the ground, the mechanic's or contractor's lien dates back to the commencement of the work or construction, whether by the lien claimant or another.

2. **Mechanics' liens 🔑182—Limited to specific structures enumerated in statute.**
   Under L. O. L. § 7416, giving a lien for labor and materials expended for construction of any ditch, flume, tunnel, or aqueduct, or any structure or superstructure, as construed by the Oregon Supreme Court, the lien is limited to the specific structure on which the work is done, and does not extend to any other, unless both are included in the same contract.

3. **Mortgages 🔑151(3)—Mortgage entitled to priority over lien.**
   The lien of a company which contracted to build an irrigation project, comprising dams, reservoirs, canals, etc., claimed on the entire project for work done under the contract, *held* under L. O. L. §§ 7416, 7418, not to relate back, so as to take precedence of a mortgage which was recorded before work under the contract commenced, because of unrelated work previously done by others, before the contract was made, on certain separate parts of the project.

In Equity. Suit by the Colonial Trust Company against the Vale-Oregon Irrigation Company, the Empire Lumber Company, Limited, Maney Bros. & Co., Herbert G. Wells, Ephriam Wells, H. H. High, and W. J. Rinney, trustee in bankruptcy of the Vale-Oregon Irrigation Company. Mortgage of complainant held superior to mechanics' liens of defendants Maney Bros. & Co. and High.

This is a suit to foreclose a mortgage given upon the canals, flumes, dams, headgates, reservoirs, and the like of an irrigation system, the property of the defendant Vale-Oregon Irrigation Company. The defendants Maney Bros. & Co. and H. H. High have filed answers and cross-complaints to the bill of complaint, setting up certain mechanics' liens which it is alleged are prior in time and paramount to plaintiff's mortgage. It is conceded that these liens were properly filed as required by law, and are valid and subsisting. It will require some detail in stating facts attending the controversy.

The project of constructing an irrigation system—I might say the irrigation

---

system now owned by the Vale-Oregon Company—was first conceived and undertaken under the auspices of what is known as the Bully Irrigation & Power Company (hereafter called the Bully Company). The Vale-Oregon Company subsequently took over the property of this company. At the time the property was so taken over the Bully Company had acquired certain water rights from the state engineer's office, first issued to two men by the names of Thomas and Johnson. The surveying had been done in the main for the dams and reservoirs, and the ditch line had been run out. The company had no title to rights of way, nor to any easements except such as it held through the water rights so obtained. The project contemplated the use of two dam sites, one known as the Anderson, and the other as the Lamberson. The Lamberson was the main storage reservoir, and the Anderson a diversion dam, but designed also for storage of a relatively small amount of water. Some work had been done.

Judge Davis says, in effect, that there had been quite a lot of work done at the Lamberson dam site, by stripping off the rock from the mountain side preparatory to making a toe wall for the dam, and below the Anderson dam site there had been cleared off the sagebrush and rubbish, and stuff like that, to get the ground cleared for excavation, on quite a distance of the surveyed canal; that the company had also made extensive excavations on the line of its survey; and that afterwards the line of the canal as built by the Vale-Oregon Company followed the same line for some distance in different places. The witness instances a diversion at one place, where it was first designed to run a tunnel through the point of a hill, and the Vale-Oregon Company ran its line around the point.

Mr. Eastham, attorney for the Bully Company, relates that some work was done on excavating the ditch from the diversion of the Anderson dam. He could not approximate the quantity of work done, but states that the value thereof was around $8,000, a little more, and that the time occupied was probably largely during the month of June, 1911, probably running into July. "I might say," he says, "I think, from May to July, including July." He also says that there was no actual work done after that time by that company, but it is possible there was some engineering work done; that the farmers interested in the project did all the work that was done; that they were likewise stockholders, and were credited on their water rights for the work they had done on the ditch, amounting to some $8,000. The witness was of the view that the work that was done on the ditch was abandoned, and not carried out by the Vale-Oregon Company. He further relates that the farmers who owned the land beneath the project did the work, and were to receive credit on the ultimate charge for the water; the company furnishing them with food, the teams with feed, and the supplies, and their services going to pay for the water lien against their lands, and that that obligation of the company—credit due these stockholders by the company—was assumed by the transferee at the time the transfer was made.

Ashford, who was the engineer under Maney Bros. & Co., testifies that there were two original survey lines, comprising the ditches and dams made by the Bully Company before the Vale-Oregon Company acquired the project, and that the line he ran for Maney Bros. & Co. was practically along the same route, a slight variation being made in places to avoid expensive work; that the system adopted by Maney Bros. & Co. was in the main substantially that which the Bully Creek Company had approved; that the dam sites were the same, and the construction work that had previously been done was continued by Maney Bros. & Co.

Thomas F. Deegan, who examined the project prior to the time Maney Bros. & Co. took charge of the work, asserts that there had been no work done previously that was used by them, or that was of any value.

As it relates to the transfer of the properties by the Bully Company to the Vale-Oregon Company, it appears that the Bully Company entered into a contract with Judge George E. Davis to transfer the property to him. This was only as a measure of convenience, however, pending the organization and incorporation of the Vale-Oregon Company, and the conveyance was finally made, through Davis, to this company. The conveyances were consummated about February, 1912.

Negotiations were begun with Maney Bros. & Co. for constructing the irrigation system before the final transfers were made of the property to the Vale-Oregon Company, and it was insisted on their part that a certain amount of money should be deposited before they would move or undertake the construction. The contract was consummated about the middle of May, 1912, but Maney Bros. & Co. did not begin the work of construction under their contract until about October 20, 1912.

The Vale-Oregon Company was not only organized for taking over the property, but with a view also of bonding it for raising funds with which to carry on the work of construction. Accordingly, on January 1, 1912, the Vale-Oregon Company executed its deed of trust covering the property, to secure to plaintiff the payment of a sum not to exceed $2,000,000. The deed was, however, not filed for record nor recorded until July 9, 1912.

Theodore A. Bell and A. E. Shaw, both of San Francisco, Cal., for plaintiff.

Davis & Kester, of Vale, Or., and Bauer, Greene & McCurtain, of Portland, Or., for defendants Maney Bros. & Co.

H. C. Eastham, of Vale, Or., for defendant High.

W. H. Brooke and P. J. Gallagher, both of Ontario, Or., for trustee in bankruptcy.

WOLVERTON, District Judge (after stating the facts as above). The crucial controversy attending this case is whether the liens of the mechanic's lien claimants are paramount to that of plaintiff's mortgage, and this depends upon whether it may be considered that the work of construction was entered upon prior to the time of the recording of plaintiff's mortgage.

[1] The lien of a mechanic or contractor, under the statute, is preferred to the lien of a mortgage or other incumbrance which may have attached to the land subsequent to the time when the building or improvement was commenced, or the materials were commenced to be furnished and placed upon and adjacent to the land, and so of a mortgage or other incumbrance which was unrecorded at the time such building, structure, or other improvement was commenced, etc. Section 7418, Lord's Oregon Laws. It can scarcely be questioned that, under a statute like this, the lien of the mechanic or contractor has relation back to the commencement of the building, structure, or other improvement, and this whether the particular contract or arrangement under which the work was done was entered upon, or the work was so done, subsequent to the time of the attachment of the mortgage or other incumbrance or not. Henry v. Hand, 36 Or. 492, 59 Pac. 330; Taylor v. Burlington, C. R. & M. Ry. Co., 23 Fed. Cas. 737, No. 13,783; Davis v. Bilsland, 18 Wall. 659, 21 L. Ed. 969; Brooks v. Railway Co., 101 U. S. 443, 25 L. Ed. 1057; Neilson v. Iowa, etc., R. Co., 44 Iowa, 71; Flint & Walling Manuf'g Co. v. Douglass Sugar Co., 54 Kan. 455, 38 Pac. 566. The question of greatest difficulty is in determining whether the work that was actually done on the dams and reservoirs and upon the ditch or canal, prior to the time when the Bully Company transferred the property to the Vale-Oregon Company, is to be considered under the conditions attending the controversy.

[2] The mechanic or contractor is given a lien for labor performed, material furnished, etc., for the construction of any ditch, flume, tunnel, or aqueduct, or any structure or superstructure. Section 7416, L. O. L. The Legislature, in adopting this statute, probably did not have in view an irrigating system, which comprises in many instances reservoirs, dams, flumes, tunnels, and aqueducts, headgates, laterals, and all things incident thereto, or it would have made suitable provision to cover such a system. What it did do was to give a lien upon the specific structures therein enumerated. Any one performing work upon any one of the structures specified in the statute is entitled to a lien thereon; but that would not entitle him to a lien upon another of such structures, unless he did work on it also, and likewise claimed his lien thereon. The only way in which he could be entitled to a lien upon a whole system, which includes ditches, flumes, tunnels, aqueducts, and other structures, such as reservoirs, dams, and the like, would be to tie them all together under a contract for constructing the system. Bearing out these propositions, it has been decided in the state court (by which this court is bound, because this is a construction of a state statute) that the liens given are specific, and extend to the particular building, structure, or edifice upon which the labor was performed or in which the materials were used. Dalles Lumber & Mfg. Co. v. Wasco Woolen Mfg. Co., 3 Or. 527; Kezartee v. Marks & Co., 15 Or. 529, 16 Pac. 407. It has been further held, however, that:

"A single lien upon separate buildings is allowed when they are erected for any common purpose or connected use, as in the case of barns, stables, and other outhouses used in connection therewith, and within the curtilage of a dwelling, or where the buildings have been erected for some general and connected use." East Side Mill Co. v. Wilcox, 69 Or. 266, 138 Pac. 843.

Beyond this, also, it is permissible to file a single lien upon several structures or buildings situated in proximity to one another, belonging to the same person, where the construction was done under a single contract for a stipulated sum. Willamette Mills Co. v. Shea, 24 Or. 40, 32 Pac. 759. Without the tying together of the several structures under one contract for their construction, it is clear that they could not be covered by a single lien.

[3] The most that can be claimed for the work done by the Bully Company is that the company had stripped off the rock from the mountain side at the Lamberson dam site preparatory to making a toe wall for the dam, had cleared off the sagebrush and rubbish for quite a distance along the survey preparatory to excavating for the canal, and had made extensive excavations on the line of the survey. In view of the statute, this would indicate that the Bully Company had performed work on a structure, namely, the Lamberson dam site, and on a ditch or canal, and the persons doing the work were entitled to liens upon the specific structure or canal upon which the work was done, but not upon both, unless the work was done under a contract for the building in whole or in part of both.

The lien, when filed, would have relation back to the commencement of the work on the particular structure, canal, or aqueduct, and

not upon all of them, upon which work had been done, unless they were tied together by a contract for construction of the whole, simply because the statute does not give a lien upon a project or system, but, I repeat, upon particular structures that may enter into or go to make up the project or irrigation system. Elsewhere the statute gives a lien upon railroads. Without that, a contractor or workman could procure a lien upon station houses, warehouses, and tracks, conforming to the particular structure upon which the work was done, but not upon the railroad as a project or system. This is a fair illustration of the principle which manifestly applies here. The defendants Maney Bros. & Co. claim a lien upon the entire project, but they do this by specifying the particular structures that go to constitute the project; and this they may do, as they have a contract with the Vale-Oregon Company to construct the entire system, and the separate and specific structures are tied together by contractual relations. But they are not entitled to avail themselves of the work previously done under the auspices of the Bully Company upon a particular structure, canal, or aqueduct of the system for carrying their lien upon the entire project back to the commencement of such work. I concur, therefore, with the conclusion reached by the learned judge of the circuit court of the state in another proceeding in that court. Equitably, Maney Bros. & Co. were dependent entirely upon the bonding of the property for their pay in forwarding the work of construction. They refused to proceed with the work until money was provided for them, and it was in view of the Vale-Oregon Company procuring the mortgage for providing funds for meeting the obligations of that company that they entered into the contract for construction and undertook the work, and it may well be questioned whether they ought now to be allowed to claim a lien superior to the mortgage of plaintiff.

It follows that the plaintiff's mortgage is superior and paramount in time and right to Maney Bros. & Co.'s lien, and likewise to the lien of the defendant High, and the cause will be referred to the master, to determine the amount of the mortgage and of the liens of defendants.