[Civil No. 1121.   Filed April 2, 1910.]

[108 Pac. 256.]

SANTA FE, PRESCOTT AND PHOENIX RAILWAY COMPANY, a Corporation, Defendant and Appellant, v. ARIZONA SMELTING COMPANY, a Corporation, and J. KEARNEY RICE, Trustee in Bankruptcy of Arizona Smelting Company, Bankrupt, et al., Plaintiffs and Appellees.

CARRIERS—FREIGHT—RIGHT TO LIEN—CARRYING ON MILL.—Civil Code of 1901, paragraph 2906, gives persons who labor or furnish material for carrying on of a mill a lien on the same for the amount due them therefor. *Held,* that a carrier is not entitled to a lien thereunder for freight charges in transporting ore belonging to another to an ore mill as for labor for the carrying on of the mill, its labor being incidental to the furnishing of the material rather than to the carrying on of the mill after the material was received.

APPEAL from a judgment of the District Court of the Fourth Judicial District in and for the County of Yavapai. Richard E. Sloan, Judge. Affirmed.

The Santa Fe, Prescott and Phoenix Railway Company filed a cross-complaint in this suit in the district court, seeking to have its lien established for charges for transportation of ore to the smelting company. A general demurrer to the complaint was sustained, and from judgment entered thereon the railway company has appealed.

T. J. Norton, E. W. Camp and Paul Burks, for Appellant.

The whole controversy in this case resolves itself into simply one of interpretation and construction of the Arizona lien

law, with reference to labor and supplies furnished to a mill, namely, section 2906 of the Revised Statutes of Arizona of 1901. The wording of that part of the section under which appellant claims that it is entitled to a lien is as follows: "2906. . . . All persons who labor or furnish . . . materials . . . for the carrying on of any mill, manufactory or hoisting works at the request of the owner thereof or his agent shall have a lien against the same. for the amount due them therefor. . . ."

The section of the Arizona statutes just quoted is identical with the Nevada statutes, and is found in Cutting's Compiled Laws of Nevada, section 2899. This statute was in 1871 construed by the United States district court as giving a lien to a teamster hauling quartz to a mill, on the ground that he "performed labor for the carrying on of the mill." *In re Hope Mining Co.,* 1 Saw. 710; Fed. Cas. No. 6681, 9 Morr. Min. Rep. 364; *Gould* v. *Wise,* 18 Nev. 253, 3 Pac. 30. After receiving the foregoing construction the statute was adopted by the Arizona legislature and enacted as section 2278, Laws of 1887.

"A smelter is a 'mill' or 'manufactory' within the meaning of the mechanic's lien law." *McAllister* v. *Benson,* 2 Ariz. 350, 16 Pac. 271. "Where the common-law lien gives a remedy and another is provided by statute, the latter is merely cumulative unless expressly or by necessary implication declared exclusive." "Where a right exists at common law and a new remedy is given by statute, the latter is cumulative and either may be pursued." 1 Century Digest, "Actions," No. 273, 2740; *Monterey etc.* v. *Abbott,* 77 Cal. 541, 18 Pac. 113, 20 Pac. 73; *Ward* v. *Severance,* 7 Cal. 126; *Roberts* v. *Landecker,* 9 Cal. 262; *Carpenter* v. *Bayfield etc. Ry. Co.,* 107 Wis. 611, 83 N. W. 765. It has been held by the supreme court of California that a common carrier may deliver freight, thereby waiving any common-law lien which it might have asserted, and then turn around and attach those same goods for freight charges due thereon, the common-law lien for which it had just waived. *Wingard* v. *Banning,* 39 Cal. 543. The existence of the common-law lien is not inconsistent with the statutory law; and the waiver of the common-law lien does not affect the statutory lien. Under statutes not nearly so broad as that of Arizona, it has been held that a teamster has

a lien for labor performed in hauling materials used in the erection of a building. *Hill* v. *Newman,* 38 Pa. 151, 80 Am. Dec. 473; *McElwaine* v. *Hosey,* 135 Ind. 481, 35 N. E. 272; *Eccleston* v. *Hetting,* 17 Mont. 88, 42 Pac. 105; *McLain* v. *Hutton,* 131 Cal. 132, 61 Pac. 273, 63 Pac. 182. We rely upon and are entitled to the benefit of the construction placed upon the Nevada statute prior to its adoption in Arizona.

Vyne & Lamson, Crocker & Wickes, Norris & Ross and Henry L. Hooker, for Appellees.

A common carrier has a lien for freight which amply protects it, and, such being the case, no legislature should be deemed to have created a further remedy except where words are used which admit of no question, and the Arizona statute is not so worded. A special statute has been enacted in Arizona in respect to railroad corporations, wherein, among other things, the common-law lien of a common carrier is recognized and made more effective by the granting of a power of sale, and if it had been the intention of the legislature to provide a further remedy for a railroad company in respect to the collection of its charges for freight, it would have been enacted as a part of this chapter and not as a part of the lien law. There are decisions which clearly hold that common carriers are not such as come within the application of statutes designed to protect those who labor in connection with the carrying on of a plant. *Seventh National Bank* v. *Shenandoah Iron Co.,* 35 Fed. 436; *Fidelity Insurance Trust & S. D. Co.* v. *Roanoke Iron Co.,* 81 Fed. 439. "A contractor is not a laborer within the meaning of the statute." *Klondike Lumber Co.* v. *Williams Bros.,* 71 Ark. 334, 75 S. W. 854. Lien statutes, being in derogation of the common law, should be strictly construed. *Mushlitt* v. *Silverman,* 50 N. Y. 360; *Wagar* v. *Briscoe,* 38 Mich. 587; *Culver* v. *Schroth,* 153 Ill. 437, 39 N. E. 115; *Davis* v. *Livingston,* 29 Cal. 283; *Gale* v. *Blaikie,* 129 Mass. 206.

KENT, C. J.—This appeal involves the construction of paragraph 2906 of the Revised Statutes of 1901, which reads as follows: "All foundrymen, boiler-makers, and all persons who labor or furnish machinery, boilers, castings, or other material for the construction, alteration, repairs, or carrying

on of any mill, manufactory, or hoisting works at the request of the owner thereof, or his agent, shall have a lien on the same for the amount due him or them therefor.'' It is the contention of the appellant that, under this statute, it is entitled to have established a lien for freight charges for ore transported by it to the smelting company. It is not claimed by the appellant that it is entitled to a lien by virtue of the provision that all persons who furnish material for the carrying on of a mill are entitled thereto, because the ore transported was not the property of the railroad company, but was transported by it merely as a carrier. The contention is that, by reason of such transportation, the railroad company has labored for the carrying on of the mill. It has been held under a statute giving a lien to any person who performs labor or furnishes material in the erection of a house that a person who hauls lumber to be used in such construction was as much entitled to the benefit of the lien as the materialman who furnished the lumber and. the laborers who actually erected the building. *Fowler & Guy* v. *Pompelly,* 25 Ky. Law Rep. 615, 76 S. W. 173. It has also been held that under a statute giving a lien for all persons performing labor in the erection of a mill, manufactory, etc., a teamster hauling material to and from a ditch in a public street was entitled to a lien for services incidentally necessary to the erection of a steam heating plant. *Wells* v. *Christian,* 165 Ind. 662, 76 N. E. 518. Other cases are also cited where the courts have held that persons hauling materials at the request of the owner and contractor are entitled to the benefits of the statute giving a lien for work in the erection of buildings. In *Re Hope Mining Company,* 1 Saw. 710, Fed. Cas. No. 6681, 9 Morr. Min. Rep. 364, the United States district court for the district of Nevada held that under a similar statute to the one in question a teamster hauling quartz to the mill was a person performing labor in carrying on the mill, and entitled to the benefit of the lien law. This ruling was afterward followed by the supreme court of Nevada in the case of *Gould* v. *Wise,* 18 Nev. 253, 3 Pac. 30.

The appellant contends that there is no distinction in principle between the position of a private carrier thus allowed a lien and that of a railroad company, a public carrier; that the fact that a railroad corporation, as such public carrier,

has a lien for freight, which lien ceases with the delivery of the goods, does not debar it from the enjoyment of the lien under the statute in question, which attaches upon delivery and after the extinguishment of the former lien.   It is argued with some plausibility that the labor of transportation of materials and supplies is as essential to the operation and carrying on of the mill as are the materials furnished; that such labor in many cases is of far more value than the material and supplies transported; that such labor enters into and constitutes part of the value of the material and supplies, without which the mill could not be operated or carried on; that this territory is from a manufacturing point of view a new country; that its policy is and has been to develop its mines and manufactures of all kinds; that its laws have been enacted with that end in view, and for that purpose a liberal policy was established to favor the building of railroads and other public enterprises; that here, as in all new countries, the greatest single difficulty is the absence of large capital with which to install and carry on manufacturing enterprises; that it is the policy of the law to so provide that the greatest amount of business may be done with the limited capital available; that, for these reasons, shippers of ores were allowed a lien upon the smelter in order to induce them to extend credit, and not to require the payments for ore to be made in advance; that there is no reason why railroad companies should not be given the same inducement to deliver the ore without requiring payment in advance of the freight charges; that freight charges on ore are uniformly based on the value of the ore per ton, and it is only after the smelting of the ore that the value of it and the consequent freight charges are accurately known; that this method of making freight rates is of long standing through the United States and was well known to the legislature when it enacted the lien laws in question; that the nature of the smelting business and the conditions prevailing in this part of the country make it necessary that railroads be allowed the same lien as that allowed to those furnishing the materials transported; that the statute is a remedial one, and should be construed liberally, not only with respect to the remedy, but also with respect to the right.

We find no difficulty in determining that a corporation may labor, within the meaning of the statute, nor do we think that

the fact that the railroad company may have a lien for freight would operate to prevent its claiming a lien under this statute if the language of the statute permits. We have to determine, if we can, from the language of the statute and the conditions existing at the time of its passage, the intent of the legislature. The law applies to two classes of persons: First, those who furnish material for the carrying on of the mill; second, those who labor for the carrying on of the mill. The appellant does not claim to come within the first of these classes, but within the second. The distinction between the two classes of liens, we think, has not always been observed by the courts. For instance, in the Hope Mining case, *supra,* upon which the appellant especially relies, the court held that the lien attached because "the labor of hauling the quartz to a mill of this character is indispensable to carrying it on"; or, in other words, that, as the ore transported was indispensable to carrying on the mill, therefore in such carriage the teamster was "performing labor in carrying on the mill." The materials being essential, their transportation to the mill was, of course, essential to the carrying on of the mill, just as furnishing the material was essential to the carrying on of the mill; but, because the material was essential in carrying on the mill, it does not follow that the carrier thereof to the mill labors in the carrying on of the mill, any more than the producer of the material from the ground labors in the carrying on of the mill. The carrier labors, it is true, but his labor is in the transportation and carriage, and therefore labor incidental to the furnishing of the material rather than incidental to the carrying on of the mill after the material is received. In the Fowler & Guy case, *supra,* the court held that, as the person furnishing the material had a lien and the person erecting the building had a lien, the teamster whose work was just as important to the erection of the building ought also to have a lien. That is the argument urged here— the man who furnishes the ore has a lien, the man who stokes the ore has a lien, if they have liens the carrier, whose work is as important to the carrying on of the mill as either, ought also to have a lien. The answer is that, conceding that he ought to have it, the statute, while giving it to the man who furnishes it and to the man who stokes it, does not give it to the carrier. We are not concerned here whether one furnish-

ing supplies may not also have a lien for the cost of transporting such supplies as an incident to his lien for furnishing. What we do decide is that under this statute as it exists no such lien for carriage is in terms given, and that, if such lien exists, it exists as an incident only to the lien for furnishing, and cannot be availed of by a common carrier under the guise of work for the carrying on of the mill, any more than it could be availed of by the producer and furnisher of the ore as work done in carrying on the mill, if the statute did not give the latter a specific lien for such furnishing. The effect of the construction contended for is to read into the statute a lien for transportation so as to make the statute read, in effect, "all persons who furnish or transport materials necessary for the carrying on," etc.; but this the legislature has not in terms done, but has limited the lien to persons furnishing the materials and to persons laboring in the carrying on of the mill. Whatever may be the effect of the law with respect to the rights thereunder of teamsters or private carriers serving the mill owner, as to which we express no opinion, we do not think it was the intent of the legislature in providing a lien for those who labor in the carrying on of a mill to give by this statute a lien to a railroad company for transportation by it of supplies. We are strengthened in our belief that this was not the intention of the legislature by the fact that such carrier has, without the statute, a lien for its freight which can be asserted; that, though the actual amount of such freight charges cannot, perhaps, be ascertained until after the smelting of the ore, the difference between the probable and the actual amount due is negligible in quantity, and the railroad company may, if it chooses, collect before delivery substantially all of its freight charges, and therefore its common-law lien is to all intents and purposes effective; and, further, that if the legislature had intended to give a lien for such transportation, it would have been easy to include such lien in express terms in the statute; and, further, because the operation of similar lien laws has not only never been extended by any court to apply to freight charges due to a railroad corporation as a common carrier, but respectable authority is to be found holding that it does not so apply. *Seventh National Bank* v. *Iron Co.* (C. C.), 35 Fed. 436; *Fidelity Ins. Co.* v.

*Iron Co.* (C. C.), 81 Fed. 439; *American Surety Co.* v. *Cement Co.* (C. C.), 110 Fed. 717; *Wilson* v. *Whitcomb,* 100 Pa. 547.

We think the trial court was right in sustaining the demurrer to the complaint, and its judgment is affirmed.

DOAN, CAMPBELL, LEWIS, and DOE, JJ., concur.