[Civil No. 2575. Filed March 19, 1928.]

[265 Pac. 606.]

JAMES CASHMAN, Appellant, v. D. W. RUSSELL, Trustee of the Estate of SIGNAL MINES COMPANY, a Corporation, Bankrupt; and WESTERN METALLURGICAL COMPANY, a Corporation, Appellees.

Mr. Louis L. Wallace, for Appellant.

Mr. J. F. Moreno (Messrs. Favour & Baker, of Counsel), for Appellee Russell.

ROSS, C. J.—James Cashman performed certain services for the Signal Mines Company in connection with its mining operations, and this suit was brought by him to establish and foreclose a lien on the mines and mining claims for the reasonable value of such services.

The case was tried to the court without a jury and the plaintiff was given judgment for the amount of his claim, but denied a lien on the mining properties. The plaintiff has appealed and presents the question as to whether the judgment disallowing his lien was correct.

The record discloses that the mines are located in Owens mining district, Mohave County, and are about 45 miles from Yucca, the nearest railroad station. The plaintiff, who was the owner of motor-trucks, was employed by the Mines Company to do its hauling in the equipment and operation of its mines. Besides hauling mining supplies and materials from place to place on the mines, he conveyed, as directed, from Yucca and Kingman, groceries, lumber, powder, oil, steel, machinery, hay, barley, etc., to the mines as needed in their operation and development, and concentrates from the mines to the railroad station at Yucca for shipment. He hauled the pipes for a pipeline from the pump on the Colorado River (some nine miles distant) that supplied the mines with water and after the pump was installed conveyed the fuel oil

thereto for power purposes. He also hauled sand to the mine for the construction of a mill thereon. He repaired, from time to time, the roads over which he did such trucking. In addition, he checked and O. K.'d all freight bills and kept the time of some of the employees of the Mines Company working at the railroad station.

That the services and labor were rendered to the Mines Company at its request and were reasonably worth what plaintiff charged therefor is admitted; also that he took all necessary steps to perfect a lien on its mining property is admitted.

It is and was contended by the defendant that none of the items are lienable. An itemization of the services rendered shows how indispensable they were to the successful working of the mines, located, as they were, out in the open spaces, far from the usual and ordinary means of transportation. Some of the hauling was done exclusively on the mines; much of it originated on them but extended beyond their boundaries, and much of it originated at points outside their boundaries but ended within them. Literally, then, much and perhaps most of the labor of hauling for the Mines Company was carried on outside of and beyond the limits of the mines. Labor in hauling on the mines, being, as we shall see, within the terms of the statute, is unquestionably lienable, but whether such labor when partly on and partly off the mine, although essential to its equipment and development, is lienable is not so easily determined.

The language of the lien statute (paragraph 3654, Revised Statutes of Arizona, Civil Code 1913, as amended by chapter 67, Laws of the Regular Session of 1915) is that:

"All miners, laborers and others who may labor, . . . in or upon any mine, or mining claim, . . . shall have a lien upon the same for such sums as are unpaid."

The right to a lien for hauling materials and merchandise to be used in connection with mining and mine operations, has not been passed upon by the courts of this state, although the above statute has existed, practically in its present form, ever since 1887. Rev. Stats. of Ariz., 1887, par. 2276; Rev. Stats. of Ariz. 1901, par. 2904.

In *Santa Fe, P. & P. Ry. Co.* v. *Arizona Smelting Co.,* 13 Ariz. 95, 108 Pac. 256, the plaintiff railway company's claim of lien, under paragraph 2906, Revised Statutes of Arizona of 1901 (paragraph 3656 of the Civil Code of 1913), for transporting ore belonging to a third person to the smelter for reduction, was denied; but we do not think the decision in that case is in point or controlling here, for the reasons (1) that the lien claimant was a common carrier and not within the legislative intent (*Union Traction Co.* v. *Kansas Casualty & Surety Co.,* 112 Kan. 774, 30 A. L. R. 464, 213 Pac. 169), and (2) the controlling statute was different. In the Santa Fe case, *supra,* the court expressly stated:

"Whatever may be the effect of the law with respect to the rights thereunder of teamsters or private carriers serving the mill owner, . . . we express no opinion."

In *Tube City Mining Co.* v. *Otterson,* 16 Ariz. 305, L. R. A. 1916E 303, 146 Pac. 203, it was said, perhaps not necessary to the decision:

"Nor must we be understood as holding that a claim for labor in hauling supplies designed for use or used in or upon a mine or mining claim is not lienable under the statutes of Arizona. It has never been determined by the highest court in this jurisdiction and may be a debatable question when properly presented."

Clearly the question is an open one in this jurisdiction. The object of our lien statute is to prevent the owner of mines or mining claims from obtaining the

labor of miners, laborers and others who may labor in the improvement of such mining property, or in extracting ores therefrom, without paying for such labor.

These lien statutes are remedial in their nature and should receive a liberal construction to the end that they may accomplish what they were designed to do. 40 C. J. 51, § 11; *Davis* v. *Mial,* 86 N. J. L. 167, Ann. Cas. 1916E 1028, 90 Atl. 315.

In construing our statute, we cannot obtain very much aid from the decisions of other courts, because of the great dissimilarity of the statutes granting liens. However, even though the language in the different statutes may vary, a reading of them will satisfy one that they have the same general object and purpose. Our effort is to find out, if possible, what laborers on mining properties the legislature intended to protect by lien. It is very improbable that the legislature intended to discriminate as between persons who labor for an individual or a corporation engaged in working and developing mining property. It is hardly conceivable that it should have provided that miners who work in the mines and on them should be preferred as against those who are bringing to them the supplies necessary to prosecute their work, or those persons who, while not actually on or in the mines, are doing services without which the miners could not work or the mines operate. It would seem to us that the legislative language should not be limited to persons who labor only on and in the mining premises, but extended to all whose labor contributes directly and immediately to the mining operations and without which they could not very well be carried on. In such view, the plaintiff is clearly entitled to a lien for the hauling he did for the defendant, both to the mines and from the mines, as also for hauling pipe-line for the pump and the fuel to the pump that supplied the mine with

water. This, we are satisfied, is in accord with the great majority of the cases, under statutes whose general import is the same as ours although expressed in different language.

In *Hill* v. *Twin Falls etc. Co.*, 22 Idaho 274, 125 Pac. 204, the question was as to whether a person who hauled cement from a railroad station to the site of the dam, into the construction of which it entered and became a part, was entitled to a lien for his labor under a statute; section 5110, Revised Codes of Idaho, reading:

"Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of, any mining claim, building, . . . or any other structure, . . . has a lien upon the same for the work or labor done. . . . "

In upholding a lien for the hauling of the cement, the court said:

"So, in the present case the labor and services of the respondents became a part of the construction of the dam to the same extent as the labor of any other individuals and gave the respondents the same right to a lien. The respondents hauled the cement to the place of use for the purpose of use, and it was accepted by the appellant and so used in the construction and as a part of the construction the same as any other material or any other labor contributing to the erection and improvement of said property. It is a well-recognized principle that a materialman who makes a contract for the delivery of material to be used, and which is actually used in the construction of an improvement, may include in a claim of lien not only the value of the material but the cost of delivery to the place of use, and this being the general rule, there can be no reason why, when the labor is done and the material furnished by different persons, each person should not be entitled to a lien."

The pertinent statute of Montana (§ 7290, Rev. Codes 1907) is as follows:

"Every mechanic, miner, . . . and any other person performing any work and labor upon . . . any . . . mining claim, quartz lode, . . . for his work or labor done, . . . has a lien upon the property upon which the work or labor is done. . . . "

In *McIntyre* v. *Montana Gold Mountain Min. Co.*, 41 Mont. 87, 137 Am. St. Rep. 701, 108 Pac. 353, the lien claimants were employed—some of them in constructing a mill on the mines, some in repairing a tunnel, some in building a roadway so that the teams could reach the mill, others in cutting cordwood for use as fuel, etc. The lienability of all such claims was sustained, the court among other things, saying:

"The workmen were all employed upon the enterprise, whether in construction work as such, or in repairs and alterations, or in mining work, or in building roads, or in cutting cordwood. The entire group constitutes a consolidated claim, and the work of the whole enterprise was expended upon it. The statute does not mention repairs and alterations; yet it takes labor to accomplish them. Touching the labor expended in building roads and preparing fuel belonging to the owner for use in producing power to carry on his enterprise, it may be said it is as much labor done on the claim as is that expended in the use of a pick or hammer and drill in the workings of the mine above or below ground. The same may be said of operatives in the mill whose duty requires them to keep the machinery in order and to clear away débris which accumulates from time to time in and about the buildings erected to house the machinery."

In *Cleveland* v. *Hightower*, 108 Okl. 84, 234 Pac. 614, the right of a teamster to a lien on an oil leasehold for hauling casing for the owner of the leasehold to be used thereon was involved, and the court said:

" . . . Why should the Legislature give a lien to the person who takes the casing when delivered upon the leasehold, screws the different joints together, lets them down into the well, as necessary for its

operation and completion, which casing could not be on the leasehold but for the labor of the man who hauled it there, and at the same time deny the same character of protection to the laborer, the culmination of whose toil, though begun off the premises, resulted in the delivery of the casing where it should play its part necessary for constructing and operating the machinery or equipment for an oil well? We think this interpretation of the statute is further justified by the use of the broad term 'any labor' preceding this phraseology; in other words, the Legislature intended to give a lien, and did by the language employed give a right to the lien, to any laborer whose labor is necessary for constructing or putting together the equipment, in either drilling or operating an oil or gas well, whether that labor have its inception off the premises and its culminating effect towards the equipment of the leasehold on the premises, or whether it be done solely upon the leashold."

In *Fowler* v. *Pompelly* (Ky.), 76 S. W. 173, 25 Ky. Law Rep. 615, it was said:

"It is conceded that the materialman who furnished these articles to appellants to haul, and the laborers and contractor who actually erected the building, have liens for the material furnished and the labor performed, yet it is claimed by appellee that these appellants, who performed labor just as necessary to the erection of the buildings as the persons who furnished the material or the persons who nailed the lumber on the building, have no lien. We cannot agree to this construction of the statute. In our opinion, under a proper construction of the statute, they are just as much entitled to a lien for their services as any of the persons named."

The cases are all but unanimous to the effect that the laborer who hauls the material to the place of use is entitled to a lien for his services. Many of such cases are collated in the note to *Davis* v. *Mial*, Ann. Cas. 1916E at 1030. California originally held the contrary view, but in *McClain* v. *Hutton*, 131 Cal.

132, 61 Pac. 273, 63 Pac. 182, 622, it was said of one who hauled the material for the construction of the building:

" . . . His labor was performed on the building in the same sense as that of the men who lifted the brick from the ground to the upper parts of the building."

Practically the only case holding against the lienability of claims for hauling is *Webster* v. *Real Estate Imp. Co.*, 140 Mass. 526, 6 N. E. 71, and, as said in *Davis* v. *Mial, supra:*

"The reasons upon which it rests would oust a hod carrier and an architect of a lien."

The character of the freight conveyed or trucked to the mines was such as that it either entered into its structure or contributed to the carrying on of the owner's main purpose, to wit, mining, by supplying powder, steel, etc., for the mine, and food for the labor, whether man or beast. The legislature has determined that one furnishing merchandise to wit, foodstuffs, to a mine or mining claim owner or operator, to be consumed by the miners and laborers working on the mines or mining claims, is entitled to a lien therefor (*Russell* v. *Central Commercial Co.* [No. 2651] *ante*, p. 349, 264 Pac. 1081), and we can see no reason why the auto truckman, who hauls such merchandise to the mines and delivers it there for consumption, should not also have a lien. It would seem that for hauling concentrates from the mines to the railroad he would be as much entitled to a lien as the men who hoist the ore out of the mine or dump it into the mill for reduction. It also appears that the other items for hauling and road work are lienable.

The Western Metallurgical Company was made a defendant because it claims some title or interest in the mining claims. It seems that such company had

secured from the Signal Mines Company an option to purchase and a lease of said mining properties, on the twenty-fifth day of May, 1925. The services herein. sued for were rendered over a period prior thereto and up to June 29th, 1925—all while the Mining Company was in possession. Whatever right the Western Metallurgical Company had in said mines or mining claims was inferior to the rights of the plaintiff.

We are satisfied it was error to disallow plaintiff's lien.

The judgment is therefore reversed and the cause remanded with directions to enter judgment in accordance herewith.

LOCKWOOD and McALISTER, JJ., concur.