MORIN LUMBER CO., Respondent, *v.* PERSON et al., Appellants.

(No. 7,978.)

(Submitted January 23, 1940.   Decided February 15, 1940.)

[99 Pac. (2d) 206.]

*Mr. H. R. Boden,* for Appellants, submitted a brief and argued the cause orally.

*Mr. John F. Patterson,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants from a judgment in favor of plaintiff foreclosing a materialman's lien on property situated in Granite county.

The evidence on some points was conflicting. The findings of the court are amply sustained by the evidence and, in consequence, a fair summary of the facts may be shown by reciting the substance of the court's findings, which were as follows:

On September 15, 1937, defendant Charles McGee entered into a written contract with defendants Bert and Elmer Person, by the terms of which McGee was to construct a three-room frame house on the Person ranch described by legal subdivisions. Defendant Josephine Person was at that time the holder of the legal title to the property, and defendants Bert and Elmer Person, her sons, were in possession thereof as lessees. The property was conveyed by Josephine Person to Bert and Elmer Person on December 22, 1937.

Plaintiff furnished to McGee materials that went into the construction of the building, of the value of $1,335.76. Josephine Person paid $787.52 toward the purchase price of the materials. Other sums were paid by McGee, leaving a balance of $408.30 unpaid. The work was commenced on September 13, 1937, and completed December 13. The materials were furnished between September 10 and November 18. The lien was perfected on February 14, 1938. While the court did not expressly so find, the evidence shows without conflict that Josephine Person knew that the building was being constructed on the property and consented that it be done.

The written contract between McGee and Bert and Elmer Person contained a clause to the effect that McGee would "turn the said frame dwelling over to the party of the first part free of all incumbrances or obligations incurred in the construction of the same." It was conceded that plaintiff, through its president, drafted the contract between McGee and Bert and Elmer Person and, hence, had knowledge of the above clause in the contract. While the evidence offered by plaintiff was to the effect that it never knew whether the proposed draft of the contract was actually signed and delivered, we shall treat the case as if plaintiff knew of the clause in the principal contract.

Defendant McGee confessed judgment in his answer in the sum of $338.30. The court found, however, that the amount due is the sum of $408.30. McGee did not appeal from the judgment.

Defendants' first contention is that before there can be a lien ▉ upon the property in question, the materialman must have made a contract with the owner of the property. They rely upon the case of *Dewey Lumber Co.* v. *McQuirk,* 96 Mont. 294, 30 Pac. (2d) 475, 476. In that case Mrs. Whitesel was the owner of the property which Mrs. McQuirk was buying under contract. The materialman furnished material to the McQuirks for repairing and remodeling the house, knowing that Mrs. Whitesel was the owner. The court said:

"There was not any contract, express or implied, between the defendant Whitesel and either of the lien claimants, nor was there an attempt to plead a contract between them or either of them; there was not any consent, implied or otherwise, by Mrs. Whitesel to the purchase of the materials or the making of the improvements by the McQuirks. * * * To render the owner of his property liable for a materialman's lien, the lien must rest upon a contract debt made either directly or indirectly with the owner of the property [citing cases], unless the owner chooses to ratify what has been done or in some manner estops himself to question the lien."

Here there was direct consent of all defendants that the improvements be made. Defendants Bert and Elmer Person con-

tracted directly with McGee to have the work done. It is not necessary that the contract be made between the owner and the materialman or person furnishing labor. If that were so, our Mechanic's Lien Law would be of little value to those performing labor or furnishing materials. The *McQuirk Case* does not imply that there must be a direct contract between the owner and the laborers and materialmen. All that it implies is that the owner must consent in advance to the improvement either expressly or impliedly, or subsequently ratify what has been done.

The correct rule is stated in 40 C. J. 139, as follows: "The right to a mechanic's lien is not confined to persons contracting directly with the owner of the property, or performing labor or furnishing material with the actual knowledge of the owner, but extends to persons who do work and furnish materials under contract with, or employment by, the contractor. It is sufficient if there is a contract between the owner and some one for the improvement of the property; claimant is a laborer, materialman, or subcontractor under contract with, or employment by, the contractor; and he does work or furnishes material for the contractor in pursuance of the latter's agreement with the owner. However, to be entitled to a lien, a claimant must connect himself with the owner in some way, directly or indirectly, by some link of a contractual nature; as in all cases, the owner must have contracted with some one for the improvement of the property or at least must have authorized, requested, knowingly permitted or consented to such improvement."

The record before us is replete with evidence that all defendants consented to, and in fact were instigators in procuring the improvements to be made. The lessees, after making the written contract with McGee, actually dealt with plaintiff in arranging for the furnishing of the materials. Defendant Josephine Person gave her consent thereto and, in fact, subsequently ratified what was done by making a substantial payment for the materials.

The only other point relied upon by defendants is that because of the above-quoted clause in the contract between McGee and Bert and Elmer Person, of which plaintiff had knowl-

edge, there was a waiver by plaintiff of the right to a lien. There are cases sustaining this view. The courts are not in harmony on the subject. Cases supporting each of the divergent views are cited in 40 C. J. 148, and in 18 R. C. L. 976, and reviewed in the exhaustive note in 13 ·A. L. R. 1065.

This court had the question before it in the case of *Miles* v. *Coutts,* 20 Mont. 47, 49 Pac. 393, 395. This court conceded that a majority of the decisions "hold that a clearly expressed covenant in a contract between the contractor and the owner, that no liens shall be allowed against the building, will bind the contractor and all other persons performing labor or furnishing materials in the construction of a building, still that doctrine cannot be claimed to be the settled rule of law on the subject." It referred to decisions holding otherwise, and then concluded by saying: "We think the conclusion reached by the court in the case just quoted [*Norton* v. *Clark,* 85 Me. 357, 27 Atl. 252], that the stipulation under discussion, 'like all other stipulations, binds only those who made it or assented to it,' is the only just and legal conclusion of which the case is susceptible. We are not prepared to hold, notwithstanding the majority of the decisions be that way, that rights conferred upon a person by statute may be contracted away by a contract made by others, to which he has never assented, and of which he has no knowledge. We think such a construction of our statute in relation to mechanics' liens is unauthorized, and would result in defeating the end had in view by its enactment, by practically depriving the persons sought to be benefited of all protection under its provisions."

The language "and of which he has no knowledge" in the *Miles Case* appears not to have been necessary to the result reached. The court was following the case of *Norton* v. *Clark,* supra, which directly declared that "This particular stipulation, like all other stipulations, binds only those who made it or assented to it. The plaintiff did neither." While it is true that in the case of *Norton* v. *Clark,* supra, it was recited that plaintiff had "no knowledge of the stipulation," that fact had no bearing upon the conclusion, except as it made conclusive the statement

that assent was never given to be bound by it. That the words "of which he has no knowledge" were not considered of importance in the *Miles Case* is made apparent from the statement by the court of the question before it. That question was stated as follows: "Can the contractor and owner of the building, by contract, deprive all other persons who labor and furnish materials in the construction of a building of their right to claim a lien thereon without their assent?" Again on page 51 of 20 Mont., 49 Pac., at page 394, of the opinion the court, after commenting upon one point not important here, stated the question again, as follows: "We are still confronted with the graver question as to the power of the contractor and the owner of the building, by contract between themselves alone, to deprive all other persons who labor or furnish materials in the construction of the building of their right to claim and enforce a lien thereon without their assent?"

We conclude, therefore, that knowledge by plaintiff of the terms of the principal contract between the owner and the contractor was immaterial, except as such knowledge, along with other circumstances, might indicate that plaintiff assented to be bound thereby. There is nothing in the record to indicate that plaintiff in any way assented to be bound by that stipulation.

In *Gimbert* v. *Heinsath, Madden,* 5 Ohio C. D. 176, the court in speaking of such a stipulation, said: "The statute seems to give importance to the contract only as giving consent of the owner that the improvement be made on his land. The statute gives to laborers and material-men a direct lien, not through any rights the contractor may have, but direct upon the consent of the owner to the improvement on his land, and the performing of labor or the furnishing of materials. This right is by virtue of the statute, and the statute puts this right into * * * every consent he gives for the erection of a structure for him on his land. If then, the law makes these rights a part of the contract, as much as though written therein, what right have the owner and the contractor to strike them out and write the very opposite in without the assent of the laborer and material-man? This cannot be done without their assent. This being a posi-

120

tive statutory right, it cannot be taken from those who were intended to be benefited by it without their assent being clearly shown. To take from them this right by implication would be construing a remedial statute intended for their benefit most strongly against them. This cannot be done without violating an elementary rule of construction."

We think this is the correct rule, although we recognize that some courts have looked upon notice and knowledge on the part of the materialman as important. The case of *Hume* v. *Seattle Dock Co.*, 68 Or. 477, 137 Pac. 752, 50 L. R. A. (n. s.) 153, used a clause much like the one in the *Miles Case.* There are cases, however, which indicate that notice or knowledge of such a stipulation is of no importance, so long as there was no assent to be bound thereby. Some cases so indicating are commented upon in 13 A. L. R. 1077.

Finding no merit in either of defendants' contentions, the judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ARNOLD and ERICKSON concur.