CAIRD ENGINEERING WORKS, Plaintiff and Respondent, v. SEVEN–UP GOLD MINING CO., INC., et al., Defendants; ERICKSON et al., Appellants.

(No. 8,004.)

(Submitted April 25, 1940. Decided September 20, 1940. Re-submitted on Motion for Rehearing. Finally Decided March 1, 1941.)

[111 Pac. (2d) 1267.]

474

*Messrs. Toomey, McFarland & Chapman,* for Appellant Seven-Up Gold Mining Company, and Appellant Bernard Fotheringham, submitted an original and a reply brief; *Mr. John W. Chapman* argued the cause orally.

*Mr. Harold K. Anderson* and *Mr. Floyd O. Small,* for Appellants Simon Erickson and E. H. Lindstrom, submitted a brief, and argued the cause orally.

*Mr. C. E. Pew,* for Appellants Elizabeth M. Hansbrough, Alice W. Benson, Rae M. Wentworth and Emma F. Linnenkohl, submitted a brief, and argued the cause orally.

*Messrs. Weir, Clift & Bennett,* for Respondent Caird Engineering Works, submitted a brief; *Mr. Harry P. Bennett* argued the cause orally.

*Mr. Paul T. Keller,* for Respondent Interstate Lumber Company, submitted a brief, and argued the cause orally.

*Mr. Robert L. Word, Jr.,* for Respondent George Stoner, submitted a brief, and argued the cause orally.

*Mr. M. J. Thomas* and *Mr. William H. Clarke,* for Respondent General Engineering Company, submitted a brief.

*Messrs. Lester H. Loble, Hugh R. Adair* and *Melvin Magnuson,* for Respondent Ernest J. Palmquist.

*Mr. T. J. Davis,* for Respondent General Electric Supply Company.

*Mr. Arthur T. Acher,* for F. C. Kennett.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought by the Caird Engineering Works against the defendants to foreclose a mechanic's and materialmen's lien on improvements placed upon certain mining claims by the Seven-Up Gold Mining Company as lessee.

It appears from the record that the above named company had leases upon a number of mining claims near Lincoln, which it operated as a unit. It placed improvements upon the property consisting of a mill and other buildings. The operations proved to be unsuccessful financially, and because thereof it ceased operations. Thereafter eight mechanics' and materialmen's liens asserted by that many different lien claimants, representing a total indebtedness of nearly $25,000, were filed. The lien claimants are all of the defendants above named, excepting Simon Erickson, E. H. Lindstrom, Elizabeth M. Hansbrough, Alice M. Benson, Rae M. Wentworth and Emma F. Linnenkohl. These defendants last named are the owners of the mining claims on which the improvements were made. They question the validity of the liens and are interested because of provisions in their leases whereby upon default on the part of the lessee in carrying out the terms of the leases, the leased premises, together with all improvements thereon, should revert to the lessors.

The court sustained the liens on all of the improvements but reduced the amount of some of them. The defendants Erickson,

Lindstrom, Hansbrough, Benson, Wentworth and Linnenkohl have appealed, as did also Fotheringham, trustee. The latter takes the position that he is adversely affected by the court's decree because there is not enough property to satisfy all the lien claimants and is interested in defeating the other lien claimants. A more detailed statement of the facts will be given in connection with the consideration of the contentions respecting the validity of each of the liens. We shall first discuss the contentions presented as they affect the validity of the various claims for want of proper description of the property in the notice of lien.

### Caird Engineering Works.

As before indicated, the various mining claims in question were operated as a unit. The defendant Erickson was the owner of the Beatrice claim, and defendants Erickson and Lindstrom jointly owned the Confidence and Harry claims. The Monroe and Reliable claims were owned by defendants Hansbrough, Wentworth, Benson and Linnenkohl, which group of appellants will hereafter be referred to as Hansbrough et al. A great many improvements in question were situated on the Reliable claim. There were built upon the Beatrice claim a mill and assay office; on the Confidence claim a three-room house, and on the Harry claim a pressure pump and motor. Other improvements and structures were placed upon other claims in the same locality and operated with the above mentioned claims. Of the claims specifically named in the notice of lien of plaintiff, only two—the Monroe and Reliable—are situated in the Seven-Up Mining District. The other four are about fifty miles therefrom, and are not here involved.

The first attack made upon the plaintiff's lien, so far as defendants Lindstrom and Erickson are concerned, is that it does not sufficiently describe the property. Plaintiff's lien described the property as follows:

"The mill, plant, mining machinery, structures and equipment of said Seven-Up Gold Mining Company, Inc., located in the Seven-Up Pete Gold Mining District near the Town of Lincoln, in the County of Lewis and Clark, State of Montana,

and particularly upon those mining claims, among others, described as follows:

> "Castle Rock, Survey No. 8091
> Monroe, Survey No. 8644
> Reliable, Survey No. 8645
> New York, Survey No. 7592
> North Side Add., Survey No. 8089
> Silver Wave, Survey No. 8090."

Defendants Erickson and Lindstrom contend that this description is not sufficient upon which to base a lien upon the mill and assay office located upon the Beatrice claim, upon the three-room house located upon the Confidence claim, nor upon the pressure pump and motor located upon the Harry claim, all three of which are within the Seven-Up Mining District. It should be said in connection with the consideration of this question that the record shows that there were two other mills in the same locality on property located in the Seven-Up Mining District. One of them was on the Confidence claim, and the other on a claim known as the Alton claim, both of which claims were under lease and operated by the Seven-Up Gold Mining Company, along with other claims above mentioned. Likewise there are situated on the Confidence claim other houses, and particularly two different three-room houses. Many of these buildings were located upon the property before the Seven-Up Gold Mining Company and its immediate predecessor started operations in that vicinity. All lien claimants are claiming a lien upon only one mill and on only one three-room house, but they assert that their liens are upon the mill located on the Beatrice claim and upon the newer three-room house on the Confidence claim. Defendants Erickson and Lindstrom contend, however, that the description in the lien is not sufficient to cover property on the Beatrice or Confidence claims.

Our statute (sec. 8340, Rev. Codes) requires the lien to contain "a correct description of the property to be charged with such lien, verified by affidavit, but any error or mistake in the account or description does not affect the validity of the lien, if the property can be identified by the description."

This court is committed to the view that our lien statutes ██ should receive a liberal construction to the end that the objects and purposes of the statutes may be carried out. In the case of *Midland C. & L. Co.* v. *Ferguson*, 61 Mont. 402, 202 Pac. 389, the plaintiff was claiming a lien for materials used in the construction of a house. The notice of lien filed by the plaintiff described the building as being situated on the NE ¼ of the NW ¼, Section 29, Township 2 North, Range 58 East, whereas the correct description was on the NW ¼ of the NW ¼. The court, however, upheld the lien and said: ''The reason for the statutory rule is apparent. If the same strictness were required in describing property involved in a mechanic's lien as in a conveyance of real estate, the owner of the property sought to be charged might prevent the lien claimant obtaining a correct description, and thereby defeat the very purpose of the lien law. The lien claimant herein was not required to employ a surveyor to locate the building sought to be charged, and the description of the land is resorted to only as a means of identifying the building. (*Western Iron Works* v. *Montana Pulp & Paper Co.*, 30 Mont. 550, 77 Pac. 413.) But the description of the land is not the only means of identification. If the description of the building itself is sufficient to enable a person familiar with the locality to point it out as the only one corresponding with the description contained in the lien, it meets all the requirements of the statute, and if, by rejecting what is erroneous in the description contained in the lien, enough remains to identify the particular property sought to be charged, the lien will be upheld.'' (See to the same effect *Federal Land Bank of Spokane* v. *Green*, 108 Mont. 56, 90 Pac. (2d) 489.)

There is testimony in the record by persons familiar with ██ the locality that, owing to the age and dilapidated condition of the other structures in the Seven-Up Camp, they could identify the particular mill and buildings covered by the lien.

The lien notice had attached to it and made a part of it a list of the items going to make up the account, showing that all work was performed and materials furnished after July, 1935, and indicating what the items furnished consisted of.

There was evidence that some of those items at least could be traced into the mill on the Beatrice claim and that it was apparent from inspection of the other mills that no materials went into them after 1934, and hence, was sufficient to show that the mill on the Beatrice claim was the only one complying with the description. It is proper, in considering the sufficiency of the description, to take into consideration the items going to make up the lien. (*Federal Land Bank* v. *Green,* supra.) Also the record shows that the mill on the Beatrice claim was distinguished from those on the Confidence and Alton claims by calling it the "Seven-up" mill. The mill on the Confidence claim was referred to by some of the witnesses, including one of the appellants, as the "Aagard" mill, while that on the Alton claim was referred to as the "ball mill."

Defendants Erickson and Lindstrom rely upon the case of *Johnson* v. *Erickson,* 56 Mont. 550, 185 Pac. 1116, as sustaining their contention that the description in the lien is not sufficient to cover the property on the Beatrice, Confidence and Harry claims. That case is readily distinguishable from this. In that case the property was described as being situated in the L. E. Newlon Second Addition to the town of Fairview, while in fact it was in the Revised L. E. Newlon Second Addition, and there was no testimony to aid the description. Here there is only one Seven-Up Mining camp, and while there were different mills in the camp we cannot say that the trial court erred in accepting the testimony of the witnesses to the effect that the property covered by the lien could be identified by them.

In sustaining the sufficiency of the description we also bear in mind that, while the purpose of a description is to advise the owner or subsequent purchaser and encumbrancer of the fact of the existence of the lien (*Johnson* v. *Erickson,* supra), or, as better stated in *Western Iron Works* v. *Montana P. & P. Co.,* supra, "to notify all parties dealing with the property that a lien is claimed upon it," still we keep in mind that in this case there are no subsequent purchasers or encumbrancers, and hence no one who could have been misled by

the description in the lien. The lessee who constructed the structures does not claim to have been misled and confesses the amounts due to the various claimants. The lessors here are in nowise prejudiced by the description and could readily ascertain what property was affected by the lien.

We agree with the statement of the supreme court of Colorado made in the case of *Cary Hardware Co.* v. *McCarty*, 10 Colo. App. 200, 50 Pac. 744, where it said: "The same rule of construction would certainly not apply in a case where the result affected the interest of an innocent purchaser for value, whose rights might have been prejudiced by a lack of full description, and one which affected only the interest of the owner whose land has been enhanced in value by the lien claimants, and who is presumed to know its location." (And see to the same effect, *McFeron* v. *Doyens*, 59 Or. 366, 116 Pac. 1063, and *National Lumber Co.* v. *Bowman*, 77 Iowa, 706, 42 N. W. 557.)

Here the description did not purport to embrace only the property situated on the named claims, but embraced that situated on the named claims, among others. In such circumstances the trial court was correct in concluding that the description was sufficient, when coupled with the testimony of those familiar with the property to embrace that situated on the claims owned by Erickson and Lindstrom.

The district court properly held that the description of the property contained in plaintiff's notice of lien was sufficient to justify imposing a lien upon the property situated on the Beatrice, Confidence and Harry claims owned by the defendants Erickson and Lindstrom.

### General Electric Supply Corporation.

The defendants Erickson and Lindstrom contend that the ▉ notice of lien of the defendant General Electric Supply Corporation was defective in that it did not adequately describe the property. This lien claimant described the property as follows:

"Those certain mines, buildings, mill, and appurtenances occupied and used as a mine and mining equipment and plant for said mine and buildings, which said mine and buildings

are situated on the following described real estate in the County of Lewis and Clark, State of Montana, to-wit:

"Those certain mining claims, known as: Castle Rock Mining Claim, Survey No. 8091; Monroe Mining Claim, Survey No. 8644, Patent #394044; Reliable Mining Claim, Survey No. 8645, Patent #394044; New York Mining Claim, Survey No. 7592; North Side Add. Mining Claim, Survey No. 8089; Silver Wave Mining Claim, Survey No. 8090;

"All said claims located in the Seven-Up Pete Section of the Stemple Mining District, near the town of Lincoln, in the county of Lewis and Clark, State of Montana;

"Also the Confidence unpatented lode mining claim, being situated in Section 29, Township 14, North of Range 7 West, Lewis and Clark County, State of Montana."

This description, as will be noted, differs from that of the plaintiff in that it confined the property to that situated upon the claims named. The Confidence claim, upon which a mill is situated, was named. We hold that as to this lien it must be confined to the property situated on the claims named. It cannot be held to embrace the mill situated on the Beatrice claim. To hold that the lien embraced the mill on the Beatrice claim we would have to say that the statutory provision requiring a description of the property may be entirely ignored. This we may not do. (*Powers* v. *Brewer*, 238 Ky. 579, 38 S. W. (2d) 466.)

To hold that this lien covered the mill on the Beatrice claim we would have to disregard the description given and substitute another. (Compare *Fernandez* v. *Burleson*, 110 Cal. 164, 42 Pac. 566, 52 Am. St. Rep. 75.) Neither can it be said to cover any of the property on the Harry claim. It is sufficient, however, to embrace all structures on the Confidence claim used in the mining operations, including the three-room house. As to structures not situated on the claims named in the lien notice, the lien cannot stand under the decisions in the cases of *Goodrich Lumber Co.* v. *Davie,* 13 Mont. 76, 32 Pac. 282, and *Johnson* v. *Erickson,* supra.

Here it should be noted that there is no description of the buildings sought to be covered by the lien, aside from their location on the named claims so as to come within the reasoning applied in the case of *Midland C. & L. Co.* v. *Ferguson,* supra, and that of *Western Iron Works* v. *Montana P. & P. Co.,* supra.

As before stated, this lien must be confined to property situated on the named claims. While there appears little reason for the description of the property except to protect subsequent purchasers or encumbrancers—and there are none such here— yet the statute so provides, and we are not at liberty to disregard the statute.

This conclusion does not conflict with, but is sustained, by the holding in *McIntyre* v. *MacGinniss,* 41 Mont. 87, 108 Pac. 353, 137 Am. St. Rep. 701. There one notice of lien did not mention the Central Lode but did mention Placer Lot No. 42 within the boundaries of which the Central Lode fell. That description was held sufficient therefore without naming the Central Lode. On the other hand some of the work was shown to have been done on the Mabel Beal Claim and others not described in the notices of liens. The court held that this fact would not invalidate the Central Lode lien, but in effect held that the lien would be confined to the particular claims named or to the area included within the claims named.

*Claim of Bernard Fotheringham, Trustee.*

This claimant in his notice of lien described the property as follows: "A lien upon the building, milling machinery, mining machinery, tools, equipment, bedding and all other property belonging to the Seven-Up Gold Mining Company, located on the following patented lode claims: The Monroe, Survey No. 8644; the Reliable, Survey No. 8645, and the Confidence unpatented Lode Mining Claim; all said mining claims being situate in Section 29, Township 14 North of Range 7 West, Lewis and Clark County, Montana."

What we have said regarding the lien of the General Electric Supply Corporation necessitates a holding that this lien cannot

be construed as covering property other than that on the named claims.

### Claim of Interstate Lumber Company.

The lien of this claimant describes the property as follows:

"That the following is a correct description of the property to be charged with said lien; said property being situated in Lewis and Clark County, Montana: The buildings are located on the following patented lode claims: The Monroe Survey No. 8644, Patent No. 394044, the Reliable Survey No. 8645, Patent No. 394044, and the unpatented mining claim, the Confidence, all claims being in Section 29, Township 14 North, Range 7 West, and the description of the buildings is as follows:

"A mill building, with sloping flat roof and covered both roof and sides with galvanized corrugated iron, metal chimney.

"A one story frame building, gable roof covered with corrugated iron used for an assay office, brick chimney.

"A one story frame building, gable roof covered with corrugated iron used for an office, brick chimney.

"A one story frame building, gable roof covered with corrugated iron used for cook house and dining hall, two brick chimneys.

"A one story frame building, gable roof covered with corrugated iron, recessed porch on front, four brick chimneys and used as a bunk house.

"A one story frame building, gable roof covered with corrugated iron and used as a compressor house.

"A one story log building, gable roof covered with corrugated iron and used for a bunk house.

"A one story log building, gable roof covered with corrugated iron and used for a barn.

"A one story frame building, gable roof covered with slate surfaced roll roofing, one brick chimney and used as a manager's house.

"A one story frame building, gable roof, roof and walls covered with corrugated painted iron, one end of building being used for blacksmith shop and the other end as locker and shower room."

This lien, as will be observed, gives a description of the buildings, aside from designating the claims on which they are situated. The contention of Erickson and Lindstrom is that it is not a sufficient description to cover the mill on the Beatrice claim. This, they argue, follows from the fact that there is a mill on the Confidence claim and another mill on the Alton claim. It is conceded that the mill on the Confidence claim does not answer the description of the mill given in the lien notice. There is evidence that in some respects the mill on the Alton as well as that on the Beatrice claim answers the description contained in the lien. There is evidence, however, tending to show that from the description of the mill contained in the lien, a person familiar with the property would identify the mill on the Beatrice claim as the one covered by the lien to the exclusion of others, particularly when the items going to make up the account were taken into consideration along with the time that the materials were furnished. While there was some evidence to the contrary, we are not at liberty to interfere with the finding of the trial court on conflicting evidence. The court did not err in holding that this lien covered the mill on the Beatrice claim. It was also proper to hold that it covered the three-room house on the Confidence claim, and the assay office on the Beatrice claim. What we have said regarding the lien of the General Electric Supply Corporation compels a holding that the lien of the Interstate Lumber Company does not reach the pressure pump and motor located on the Harry claim.

### Claim of George Stoner.

The property was described by the lien of Stoner in the same language as that of the Interstate Lumber Company. What we have said regarding the claim of that company regarding the description of the property has equal application here.

### Claim of Ernest J. Palmquist.

This claimant described the property covered by the lien as follows:

"The mill, mine, buildings, structures and property of said Seven-Up Gold Mining Company, Inc., and the machinery,

fixtures, appliances and equipment therein, all situated in the County of Lewis and Clark, State of Montana, and upon mining claims in said county, particularly described as follows: Castle Rock Survey No. 8091, Monroe Survey No. 8644, Reliable Survey No. 8645, New York Survey No. 7592, North Side Add. Survey No. 8089, Silver Wave Survey No. 8090. Located in Seven-Up Pete Gold Mining District near the town of Lincoln, Montana.''

For the reasons stated in connection with the lien of the General Electric Supply Corporation, this lien must be confined to property situated on the claims named. It cannot be held to extend to any property on the Beatrice, Confidence or Harry claims.

Defendants Erickson, Lindstrom and Fotheringham contend that the claims of plaintiff, the Interstate Lumber Company, General Electric Supply Corporation and George Stoner must be treated as 30-day accounts, and for that reason no liens could attach for any charge farther back than 90 days previous to the time of filing the lien plus any charge during the month ending within the 90-day period. They rely upon the cases of *Big Blackfoot Milling Co.* v. *Blue Bird Mining Co.*, 19 Mont. 454, 48 Pac. 778, and *Holter Hardware Co.* v. *Ontario Mining Co.*, 24 Mont. 184, 61 Pac. 3. Since those cases were decided, the statute was amended by adding to what is now section 8340, Revised Codes, the following: ''and when there is an open account between the parties for labor, material, or machinery, such lien may be filed within ninety days after the date of the last item in such account, and include all items and charges contained therein, for material or machinery furnished for, or work performed on, the property on which the lien is claimed.'' The defendants named contend that this statement did nothing more than to announce a rule already applied by this court in *Helena Steam Heating & Supply Co.* v. *Wells,* 16 Mont. 65, 40 Pac. 78, and that this court so regarded the statute in the case of *Western Iron Works* v. *Montana P. & P. Co.,* supra. The question does not appear to have been raised in the *Western Iron Works Case.* The court simply

held that the facts of that case brought it within the rule of the *Wells Case,* and not within the *Holter Hardware Case,* and it was therefore unnecessary to go further. We think the legislative intent by the amendment is plain. That intent was to provide for the filing of a lien wherever there is an open account, within ninety days after the date of the last item furnished. The court expressly found that the accounts in question here were continuous open accounts. The evidence sustains this finding. The question was one of fact for the court to determine. (*Bartholomew* v. *James,* 76 Mont. 359, 246 Pac. 771; *Turner* v. *Wentworth,* 119 Mass. 459.)

The well-reasoned case of *William M. Graham Oil & Gas Co.* v. *Oil Well Supply Co.,* 128 Okl. 201, 264 Pac. 591, announces the correct rule applicable to facts such as we have here. To the same effect, see *Connor Livestock Co.* v. *Fisher,* 32 Ariz. 80, 255 Pac. 996, 57 A. L. R. 196.

The court properly held that the accounts in question were open accounts justifying the imposition of a lien for the total amounts due, so far as this point is concerned, since they were filed within ninety days after the date of the last item furnished.

The next contention made is that it was proper for the court to allow single liens to cover all the buildings and improvements on the several claims without reference to the amount of materials or labor that went into each structure or building separately, and notwithstanding that some of the liens cover some buildings on which the particular lien claimant furnished no materials and performed no labor.

On this point the test to be applied is whether the materials were furnished and the labor performed under one contract for the several buildings or under separate contracts for each building. If there was but a single contract for several structures, then it is proper for the one lien to attach to all buildings. This court recognized the rule as thus stated, in *Bartholomew* v. *James,* supra. The rule is quite general. (2 Jones on Liens, 3d ed., p. 538; *Parker* v. *Walker,* 48 Okl. 705, 150 Pac. 690, 10 A. L. R. 1022; *Willamette Mills Co.* v. *Shea,* 24

Or. 40, 32 Pac. 759; *West* v. *Dreher,* 73 Ind. App. 133, 126 N. E. 688; *National Loan & Exchange Bank* v. *Argo Dev. Co.,* 141 S. C. 72, 139 S. E. 183.) Nor is it necessary (although there is authority to the contrary) that the lands on which the buildings were erected be contiguous. (*International Mill & Timber Co.* v. *Kensington Heights Homes Co.,* 215 Mich. 178, 183 N. W. 793; *Burel* v. *East Arkansas Lumber Co.,* 129 Ark. 58, 195 S. W. 378, 10 A. L. R. 1017, and cases cited in note on p. 1031.) The reason for the rule was stated by the United States Supreme Court in *Phillips* v. *Gilbert,* 101 U. S. 721, 25 L. Ed. 833, when it said: ''The whole row was a building, within the meaning of the law, from having been united by the parties in one contract, as one general piece of work.'' And the fact that the materials were furnished and the labor performed as a part of a running account, does not prevent the transaction from being one based upon a single contract and where, as here, the entire property is operated as a unit and for a common purpose and for a united enjoyment, each lien attached to all the buildings and improvements. (*Lehmer* v. *Horton,* 67 Neb. 574, 93 N. W. 964, 2 Ann. Cas. 683; *Cary Hardware Co.* v. *McCarty,* supra.)

The court was right in upholding each lien on the property described in each, irrespective of the value of the materials or the amount of labor going into each structure, and regardless of the fact that no materials or labor may have gone into some of the structures or buildings. (Compare *McIntyre* v. *MacGinniss,* supra.) The record supports the conclusion that the entire property was operated as a unit and the improvements were made for the common purpose of adequately working all the claims as a single mining venture.

It is contended that in order for a materialman to have a lien there must be an understanding at the time of sale that they are to be used in a building or improvement and they must have been furnished upon the credit of a particular building, otherwise the materialman will be held to rely exclusively upon the credit of the buyer and takes no security. General statements in 18 R. C. L. 922, and 40 C. J. 89, support that con-

clusion. However the rule is not universal as will appear from the statement in 40 C. J. 89, notes 25 and 26. Liberal interpretation of our statute with the view of carrying out its purpose impels us to the conclusion that the contention cannot be sustained. We think the better view on this point is that announced in *Smith* v. *Hopper,* 67 Wash. 224, 121 Pac. 77, and *Peerless Pac. Co.* v. *Rogers,* 81 Or. 51, 158 Pac. 271.

It is next contended that the Caird Engineering lien contains many items that are not lienable. The argument is that many of the items consist of the purchase price of tools and machinery sold by the Caird Engineering Works to the Seven-Up Mining Company, and labor in repairing the tools and machinery. To support the contention the case of *Barnes* v. *Montana Lumber Co.,* 67 Mont. 481, 216 Pac. 335, is relied upon, which holds that a threshing machine is not a "structure" within the meaning of our mechanic's lien law, and in which it was held that no lien can arise against a structure for labor performed upon or material used in its creation unless it is attached to land. This is the general rule. (2 Jones on Liens, 3d ed., p. 564, sec. 1335.) As to mining property, however, the rule is different. Section 6670, Revised Codes, provides: "Sluice-boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine." By virtue of this section mining tools and machinery are deemed affixed to the mine. (*Britannia Mining Co.* v. *United States F. & G. Co.,* 43 Mont. 93, 115 Pac. 46; *Story Gold Dredging Co.* v. *Wilson,* 106 Mont. 166, 76 Pac. (2d) 73.) Since they are deemed affixed to the mine, they in effect constitute "machinery or fixtures for" mining claims within the meaning of section 8339, Revised Codes, entitling one who furnishes the same or performs labor thereon to a lien, and from what has already been said, the lien extended to all improvements and structures operated as a unit in the common enterprise. The court was warranted in so holding.

The fact that the Caird Engineering Works might have asserted an agister's lien under section 8383 does not de-

prive it of the right to assert a mechanic's lien any more so than does the surrender of the right to a vendor's lien under section 8381 deprive the seller of the right to assert a material-man's lien.

The next contention is that a part of the lien of the Interstate Lumber Company must fall because it is based upon the furnishing of materials a part of which were used in the construction of a building which was later destroyed by fire, and that it cannot be ascertained from the account how much of the materials was used in the buildings destroyed by fire, and that under the rule announced in the case of *Billings* v. *Missoula W. P. Sash Co.*, 88 Mont. 322, 292 Pac. 714, the entire lien must fall. There would be merit in appellants' contention on this point had the entire structure been destroyed by fire, and were we to adhere to the *Billings Case*. (See 2 Jones on Liens, 3d ed., p. 775, sec. 1538; 40 C. J. 335, sec. 447; 18 R. C. L., 965, sec. 107, and note in 74 A. L. R. 428.) A different rule applies, however, where only a part of the structure is destroyed. As we have hereinbefore stated, all of the buildings in question here constituted in legal effect but one structure. The destruction by fire of one unit simply amounted to a partial destruction of the structure. In such a situation a different rule applies. (See note in 74 L. R. A., pp. 433, 434; *Butler* v. *Ng Chung*, 160 Cal. 435, 117 Pac. 512, Ann. Cas. 1913A, 940; *Linden Steel Co.* v. *Rough Run Mfg. Co.*, 158 Pa. 238, 27 Atl. 895.)

In the last cited case a pan-house which constituted one of a set of buildings constituting one plant, was destroyed by fire and explosion. The question arose as to whether the lien would extend to the other buildings. The court in disposing of the contention said: "As to the third assignment, that the particular building into which the material entered was destroyed by the explosion before the lien was filed, this would constitute a good assignment if the lien had been against the pan-house. But it was against the works of which the pan-house formed a part, and that only a small fraction of the whole subject of the lien. The cases cited, *Wigton & Brooks'*

*Appeal,* 28 Pa. 161, and others, have no application to the undisputed facts here. These cases hold that the lien attaches to the buildings primarily, and the land only incidentally, because necessary to the enjoyment of the buildings. Therefore, when the buildings are destroyed, the subject of the lien is gone. But the subject of this lien, as we have already noticed, was the salt works. They are there yet, with the exception of the pan-house, and the lien is unaffected by its destruction.''

The lien of the Interstate Lumber Company on the remaining structures and improvements was unaffected by the destruction by fire of one of the buildings constituting a part of the plant of the Seven-Up Mining Company.

The next question presented is whether the lien of George ▇ Stoner can be upheld. That lien is based upon truck services in hauling lumber, mining machinery, mine cars, lockers, steel, drill steel, gasoline, groceries and other supplies from Helena, Silver and Lincoln to the mine, and in transporting concentrates from the mine to Helena. Stoner did the hauling under a Class C permit or certificate, as a contract or private carrier issued by the Montana Railroad Commission. It is contended by appellants Lindstrom, Erickson and Fotheringham that our statute does not permit a lien for hauling materials under the circumstances here presented. This court has heretofore considered this question. In *Eccleston* v. *Hetting,* 17 Mont. 88, 42 Pac. 105, it was held that one hauling railroad ties was entitled to a lien. The court recognized that ordinarily there is no lien for freight charges, but reasoned that there the hauling was not a question of freight but a constituent and essential element in the main contract to furnish the ties. While that case does not directly sustain the right to a lien here, it can have no other effect. The Seven-Up Mining Company was not interested in buying lumber to remain at the plant of the Interstate Lumber Company. Its sole desire was to have the lumber available for building purposes at its plant near Lincoln. Had the hauling price been added to the lumber, i. e., had the mining company purchased the lumber delivered at its plant, and thus had the cost of transportation included in the purchase price, then certainly the hauling charge would

have been lienable as a part of the cost of materials furnished. We think, since the lumber and materials were purchased for use on the plant of the mining company, the cost of hauling is just as much a part of the labor in constructing the buildings as that of moving the lumber and nailing it into the proper place in the erection of the buildings.

The case of *Billings* v. *Missoula White P. S. Co.*, supra, is relied upon by appellants, but that case is not in point here. There a manufacturer's lien was claimed under section 8319, Revised Codes, and we held that hauling lumber from the saw mill to a railroad spur twelve miles away was not a part of the manufacturing process.

The proper rule is announced in the case of *Hill* v. *Twin Falls etc. Co.*, 22 Idaho, 274, 125 Pac. 204, where the court said: "It is a well-recognized principle that a materialman who makes a contract for the delivery of material to be used, and which is actually used, in the construction of an improvement, may include in a claim of lien not only the value of the material but the cost of delivery to the place of use, and this being the general rule, there can be no reason why, when the labor is done and the material furnished by different persons, each person should not be entitled to a lien."

The cases are not in harmony on the subject. Cases supporting both sides of the question are considered in the note in 30 A. L. R. 466. To the same effect as the *Hill Case* are *McClain* v. *Hutton*, 131 Cal. 132, 61 Pac. 273, 63 Pac. 182, *Stimson Mill Co.* v. *Feigenson Engineering Co.*, 100 Wash. 172, 170 Pac. 573, *Cleveland* v. *Hightower*, 108 Okl. 84, 234 Pac. 614, *Fowler* v. *Pompelly*, 25 Ky. Law Rep. 615, 76 S. W. 173, *West Jersey & S. S. R. Co.* v. *County of Cape May*, 100 N. J. Eq. 181, 135 Atl. 74, and *Davis* v. *Mial*, 86 N. J. L. 167, 90 Atl. 315, and note in Ann. Cas. 1916E, 1030.

The above cases uphold a lien for hauling materials that go into a building or structure, but none of them sustain the right to a lien for hauling groceries and other supplies which are consumed in mining operations. The case of *Cashman* v. *Russell*, 33 Ariz. 451, 265 Pac. 606, sustains the view that a lien is allowable also for hauling groceries and other supplies con-

sumed in the mining operations. We do not subscribe to that view. A lien cannot be had for furnishing such supplies. (*McIntyre* v. *MacGinniss*, supra.) And neither do we think a lien can be had for hauling them. Such work is not performed upon the mining claim nor does it go into the claim or a building or a structure situated thereon, so as to entitle the hauler to a lien within the terms of section 8339, Revised Codes.

The same is true of the hauling of the concentrates from the mine to Helena. The case of *Cashman* v. *Russell*, supra, sustains the view that the person transporting concentrates is entitled to a lien, but we do not agree with that case in that respect in view of the terms of our statute which contemplates that the work shall be performed upon the mining claim or go into buildings or structures, in order to entitle the laborer to a lien.

It is contended that since part of the items claimed are not lienable, the entire lien claim must fall. Reliance is placed upon the case of *Billings* v. *Missoula White P. S. Co.*, 88 Mont. 322, 292 Pac. 714, as sustaining this view. That case sustains the contention where there is no proof from which the separation may be made. Further consideration of the question leads us to the conclusion that the *Billings Case* in this respect is unsound and should be overruled. We see no reason for condemning the whole lien when it includes some items which are lienable and some which are not, when it is possible to make the separation by proof. We think the better view is stated in the case of *Whicher Development Corp.* v. *Ross*, 142 Md. 522, 121 Atl. 372, where the court said: ''There is ample authority, if any is needed, for the proposition that a lien claim valid in part should not be wholly barred because it may be partially invalid as the result of honest error. (27 Cyc. 192; 18 R. C. L. 942; *Palmer* v. *McGinness*, 127 Iowa, 118, 102 N. W. 802; *Perkins* v. *Wilson*, 1 Marv. (Del.) 196, 40 Atl. 950; *Kittrell* v. *Hopkins*, 114 Mo. App. 431, 90 S. W. 109; *Title Guar. & T. Co.* v. *Wrenn*, 35 Or. 62, 56 Pac. 271, 76 Am. St. Rep. 454; *Powell* v. *Nolan*, 27 Wash. 318, 67 Pac. 712, 68 Pac. 389.)''

494

We think claimant Stoner should be given the opportunity to prove, if he can, how much of his claim is lienable, and how much is not, under the views herein stated.

Appellants argue, also, that the Stoner lien should have been denied because he was entitled to a carrier's lien under section 7843, Revised Codes, as well as a lien under section 8383. As hereinbefore pointed out, the fact that a person furnishing materials or performing labor might have protected himself in some other manner, but which he failed to do, is no obstacle to his right to assert a lien under our mechanic's lien law, in the absence of any such limitation on his right in the statute.

Appellants Erickson, Lindstrom and Hansbrough et al., contend that appellant Fotheringham, Trustee, cannot assert a lien upon the buildings, machinery and other equipment on behalf of the laborers whose claims he presses because they performed no work in the erection of the buildings or improvement of the machinery, but simply worked in the mine or the mill in aid of the mining and milling operations. ›

Section 8339, Revised Codes, provides: "Every mechanic, miner, machinist, architect, foreman, engineer, builder, lumberman, artisan, workman, laborer, and any other person, performing any work and labor upon, or furnishing any material, machinery or fixture for, any building, structure, bridge, flume, canal, ditch, aqueduct, mining claim, coal mine, quartz lode, tunnel, city or town lot, farm, ranch, fence, railroad, telegraph, telephone, electric light, gas, or water works or plant, or any improvements, upon complying with the provisions of this chapter, for his work or labor done, or material, machinery or fixtures furnished, has a lien upon the property upon which the work or labor is done or material is furnished."

It is clear that if the Seven-Up Mining Company owned the claims upon which the work was done, the laborers would have had the right to a lien upon the claims and also upon the buildings, structures and improvements placed thereon. (*Smith* v. *Sherman Mining Co.*, 12 Mont. 524, 31 Pac. 72; *McIntyre* v. *MacGinniss,* supra.) The difficulty here arises from the fact that the Seven-Up Mining Company was merely a lessee and not the owner of the claims.

Section 8342 provides in part that "if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien." And section 8343 reads: "When the interest in the land, building, structures, or other improvement is a leasehold estate, the forfeiture of such lease does not forfeit or impair such liens so far as concerns the buildings, structures and improvements put thereon by the person charged with such lien, but the same may be sold to satisfy said lien, and may be removed within twenty days after the sale thereof by the purchaser."

When section 8339 is read in conjunction with sections 8342 and 8343, the conclusion follows that the legislature intended that persons working on a mining claim have a lien on all of the interests of the person charged with the lien, or, in this case, on all of the interest of the lessee. The purpose of the legislature was to assure the laborer in a mine that he will get his wages and that the property upon or about which he worked and which was used in the common enterprise and which was owned by his employer at the time will be liable for such pay, and this regardless of whether or not the labor enhanced the value of the property. (*Thompson* v. *Wise Boy M. & M. Co.*, 9 Idaho, 363, 74 Pac. 958; *Walsh* v. *Havelock Coal Co.*, 55 N. D. 284, 213 N. W. 23; and see *Stearns-Roger Mfg. Co.* v. *Aztec Gold Min. Co.*, 14 N. M. 300, 93 Pac. 706.)

While enhancement of value follows from labor or materials furnished for a building structure, bridge, flume, canal, ditch or aqueduct, such enhancement need not necessarily follow in order to entitle the laborer to a lien who furnishes labor on a mining claim, coal mine, quartz lode, tunnel, city or town lot, farm or ranch within the meaning of section 8339. (*McIntyre* v. *MacGinniss*, supra.)

It is our view that since the lessee operated the entire property as a unit, anyone performing labor in the common enterprise had the right to a lien upon the entire interest and property of the lessee. The fact that the leases provided in substance that upon default of the lessee to carry out the terms

of the leases, the leased premises together with all improvements should revert to the lessor, does not alter the rule.

The statute giving the right to a lien is paramount to the conditions of the leases. (*Montana Lumber etc. Co.* v. *Obelisk etc. Co.,* 15 Mont. 20, 37 Pac. 897; and see *Morin Lumber Co.* v. *Person,* 110 Mont. 114, 99 Pac. (2d) 206.) In the *Obelisk Case* just cited there is language, by way of *dicta,* which would imply that one performing labor in extracting ores for the lessee of a mine would have no right to a lien on improvements placed upon the mine. We think the *dicta* used in that case are erroneous, and therefore decline to follow them. The same is true of similar statements made in the case of *McIntyre* v. *MacGinniss,* supra.

The court properly ruled that the lien of Fotheringham was a good and valid lien upon the buildings, machinery and improvements described in the lien notice.

The lien of the General Engineering Company arose from the following facts: On August 19, 1935, the General Engineering Company and the Seven-Up Gold Mining Company entered into a written contract at Salt Lake City, Utah. Under the terms of the contract the General Engineering Company agreed to furnish to the Seven-Up Company and perform all the engineering services for the design and construction of the 50-ton fine grinding flotation plant of the company, including the pipeline and pumping plant. The attack on the lien consists of two general propositions. It is contended:

First: That the General Engineering Company acted in the capacity of a general independent contractor, and is therefore not entitled to a lien under the mechanic's lien statute.

Second: That the type of services furnished by the General Engineering Company is not of the kind that are lienable under our statute.

Before taking up the first proposition, we wish to comment upon the question whether a corporation can be a lien claimant under our statute, section 8339, Revised Codes. The general weight of authority concedes that a corporation is considered a person within the meaning of the statute (18 R. C. L., p. 910;

*Wetzel etc. R. Co.* v. *Tennis Bros.*, 145 Fed. 458, 7 Ann. Cas. 426; *Chapman* v. *Brewer*, 43 Neb. 890, 62 N. W. 320, 47 Am. St. Rep. 779; Phillips on Mechanics' Liens, 3d ed., p. 83.) This court has frequently upheld materialmen's liens on behalf of corporations.

On the first point it is argued that the Engineering Company, ▇▇▇▇ by the terms of the contract, was an independent contractor, and that our statute extends only to the individual or person who actually performs the work and labor. Upon an examination of our statute, section 8339, supra, we find nothing which precludes an independent contractor from maintaining a lien whether he hires servants to do the actual work or not. Upon a thorough search of the decisions, we find many cases involving this question, but none based upon a statute exactly as ours. The case of *Lanier* v. *Lovett*, 25 Ariz. 54, 213 Pac. 391, is based upon a statute very similar to our section 8339. We prefer to follow the reasoning in that case, in which it is held:

"Finally, it is contended that a contractor or a subcontractor is not entitled to a laborer's or mechanic's lien, under paragraph 3639 of the Civil Code, unless such persons actually perform labor in the construction of a building. The evidence is not entirely clear as to whether plaintiff did the actual labor of installing the plumbing or employed others to do it. But assuming that others than himself did the work, we are satisfied the terms of the statute are broad enough to allow the subcontractor a lien therefor. It reads: 'Every person, firm or corporation, who may labor or furnish materials, machinery, fixtures or tools to be used in the construction * * * of any building * * * shall have a lien * * * for the work or labor done or materials * * * furnished, whether said work was done or articles furnished at the instance of the owner of the building, or improvement, or his agent.' It will be noted that any 'firm or corporation who may labor' is given the same right to a lien as 'every person * * * who may labor.' Since a corporation can only do things through its officers, agents, and employees, it is difficult to understand how it could have a lien for labor in the construction of any improvement un-

less it be for the labor of its employees. The same may be said, in a measure, of a firm. If therefore a corporation or firm as a contractor or subcontractor is given the right to a lien for labor furnished or rendered, it must be that the legislature intended the individual contractor or subcontractor to have the same right." (See, also, 40 C. J., p. 134; *Couper* v. *Gaboury,* 69 Fed. 7; *Kern* v. *Guiry Bros. Wall Paper Co.,* 60 Colo. 286, 153 Pac. 87; and compare *Little Rock, H. S. & T. Co.* v. *Spencer,* 65 Ark. 183, 47 S. W. 196.)

Likewise in Montana, if a corporation is a person within the meaning of the words used in the statute, then we can see no reason for allowing a corporation to claim a lien for the labor of its servants, and denying the right to an independent contractor who does the work through the use of servants. Holding as we do on this point, it becomes immaterial whether this claimant was or was not an independent contractor.

In contending that the services of the Engineering Company ▮▮▮▮ were non-lienable, the appellants have classified the services into three groups:

"First, Architectural Services: These consisted of the technical work of sampling the ore, assaying it, performing metallurgical tests upon it and from these experiments determining the proper kind of milling machinery to be used. This included preparation of plant specifications, blue prints, flow sheets, etc., to be used in the design and construction of the mill."

It is argued that because all the services in the above group were performed off the premises, such services are not within the contemplation of the statute, which uses the following language: "performing any work and labor upon * * * any building," etc. (Sec. 8339.) It is inconceivable that when the legislature used the term "architect" it qualified the application of the term by meaning that the actual labor must be done upon the premises and upon the very structure being erected. A more liberal and a more rational interpretation would be to conclude that when the legislature used the terms "architect" and "engineer," it contemplated the services as they are usually performed—in this case, where the architect and engineer had their equipment for performing such services—their home of-

fice in Salt Lake City. (See generally 40 C. J., p. 79, and the cases there cited; 2 Jones on Liens, 3d ed., p. 587; 18 R. C. L., pp. 912, 913.) See, also, annotation in 60 A. L. R. 1257, where the general rule is stated thus: "Although there is some conflict of authority, the rule to the effect that an architect who furnishes plans and specifications for, and supervises the construction of a building, is entitled to a lien under statutes which merely give a lien in general terms for work and labor furnished in the erection of a building seems to obtain in the majority of jurisdictions."

"Secondly, Supervising Construction of Mill: A man employed by General Engineering Co., supervised the work of constructing the mill and installing the milling machinery therein."

The objection to this item is that there was no physical work performed by the engineer, but that he acted in a supervisory capacity only. This claim, appellants contend, cannot be lienable under the statute because the statute requires "work and labor upon" the structure. The annotation in 60 A. L. R. 1274, takes up the subject of the lienability of the services of one supervising construction and states the rule to be as follows: "Although there is a lack of complete harmony among the decisions, the decided weight of authority seems to be in accord with the rule which would allow the enforcement of a claim for supervising the construction of a building or improvements."

Of course, many of the cases cited are based upon statutes quite different from ours, but some treat of statutes so similar to ours that they may be considered analogous. Thus "anyone doing work on." (*Scratch* v. *Anderson,* 2 Alberta, 109, 16 West L. R. 145.) "Do or perform any work or labor upon." (*Continental & C. Trust & Sav. Bank* v. *North Platte Valley Irr. Co.,* 219 Fed. 438, 135 C. C. A. 150.) The annotation records a minority view and, of the cases cited, refers to a Montana case annotated as in accordance with the view that one employed to supervise the construction of a building or other structure is not entitled to a mechanic's lien for services rendered as a supervisor. (*Smallhouse* v. *Kentucky & M. G. & S. Min. Co.,* 2 Mont. 443, 9 Mor. Min. Rep. 388.) This case does not justify

the listing of Montana with the minority group. The opinion in the *Smallhouse Case* is based upon a set of facts entirely different from the facts relating to this lien claimant. In that case the owner of the property upon which the lien was claimed had employed the plaintiff as a general manager of its operations. He was paid a monthly salary and did many things not connected with the actual construction of the plant. The court treated the claimant as standing on the same footing as a member of the corporation, as an owner directing and managing works of his own. Furthermore, the statute has been amended since that decision so as to specify certain individuals who may claim a lien. The words "foreman" and "engineer" now stand side by side with the words "workman" and "laborer." The very nature of the occupation of a "foreman" and "engineer" places them in a supervisory capacity and yet entitled to a lien.

"Third, Placing orders for machinery: This service consisted of an arrangement whereby the General Engineering Co. placed orders for milling machinery so as to enable the Seven-Up Gold Mining Co. to obtain wholesale prices on the same."

The objection to this item is that the statute (sec. 8339) does not include this type of service as being lienable. The appellants cite in support of this contention 40 C. J., p. 77, wherein it is said: "Profits and commissions are not lienable items, unless included in the contract price, as where the contract provides for payment of the cost of, or reimbursement for the amount actually paid out for labor and material, plus a certain percentage as commission, profit, or compensation, or unless included in the reasonable worth of the labor or materials furnished, as where the actual cost is less than the reasonable worth. No lien can be allowed for profits or commissions not earned, as on labor or material not furnished or on that portion of the contract which is not completed."

The cases cited under this section give us but little aid. We must look to our statute. We have already held that the labor or work in order to be lienable need not be actually "upon" the mining claim so long as it becomes a part of a building or structure. The statute gives a lien for the work performed by

an architect who concededly does much work which is not done on the claims and which is not incorporated in the building and yet becomes an integral part of the building when completed. Here the Engineering Company performed work and labor in placing orders for the Seven-Up Mining Company. This work and labor and the cost thereof must necessarily be done and paid for if the Seven-Up Company could get the machinery necessary, whether purchased through the Engineering Company or another. If purchased through a retail dealer, the cost would include at least as much for handling charges as was charged by the Engineering Company, and there would be no question as to its lienability. Thus, in this case, we see no reason why such service is not lienable work and labor under our statute.

The lien of the Palmquist Electric Company, as is stated by the appellants, is parallel to the Engineering Company as to items of service. The appellants also apply the same arguments to the Palmquist lien. What we have said then in reference to the Engineering Company's lien applies equally as well to the Palmquist lien. The court properly sustained both these items.

Contention is made that the General Electric Supply Corporation is not entitled to a lien because it had no contractual relationship with the Seven-Up Mining Company, but that it sold the supplies through the Palmquist Electric Company. It is clear from the record that the Seven-Up Mining Company knew of the dealings between the Electric Supply Corporation and the Palmquist Electric Company, and consented to the arrangement whereby the former was to furnish the supplies in question. This being true, the case is controlled by that of *Morin Lumber Co.* v. *Person,* supra. The contention on this point is without merit.

The next contention is that the court erred in allowing some of the lien claimants to include in their accounts items embracing materials furnished to, or services performed for, Schoenwald or the Donnelly-Erickson Mining Syndicate, the immediate predecessor of the Seven-Up Mining Company. This contention cannot be sustained. The record discloses that Schoenwald and Longmaid held some leases or mining claims in

the Seven-Up district. They were acquired with the understanding that later a corporation would be formed to take over the leases. The leases were operated by Schoenwald under the name of Donnelly-Erickson Mines Syndicate until the corporation—the Seven-Up Mining Company—was formed and the leases were transferred to it. The work continued under the Seven-Up Mining Company the same as it had under the pre-incorporation arrangement. The case falls within the rule stated in *Kirkup* v. *Anaconda Amusement Co.,* 59 Mont. 469, 197 Pac. 1005, 17 A. L. R. 441, where the court said: "It has been held by many of the courts that whenever the promoters of a corporation, in advance of its incorporation, enter into a contract intended to inure to the benefit of the company to be organized, and the company, after coming into being, recognizes, assumes and takes the benefit of such contract, it will be bound to perform it on the familiar principle of the law of contracts that one who adopts the benefits of an act which another volunteers to perform for him, or in his behalf, is bound to take the burdens with the benefits."

Furthermore, the Seven-Up Company admits the amounts claimed as due.

Appellants Erickson and Lindstrom have assigned error in other respects. We have given consideration to other points raised by them, but aside from the errors above pointed out we find no other error in the record as to points raised by these appellants.

Appellants Hansbrough et al., raised the point that a lien claimant performing work or furnishing materials on a mining claim owned by one owner, cannot have a lien on an improvement placed upon another claim owned by a different owner. We have already held that where the property is operated as a unit by the lessee, all improvements and buildings constitute but one structure within the meaning of the statutes governing the filing of mechanics' liens. Also we have held that the contract of lease is made subordinate to the statute, and when the claim is for labor performed on a mining claim as distinguished from that performed on a building or structure there need be no enhancement of the value of the property in order to entitle claimant to a lien.

The court did not err in holding that, since the property was operated as a unit by one lessee, the several liens attach to all of the property owned by the lessee and used in the operation. (Compare *Big Blackfoot Milling Co.* v. *Blue Bird Mining Co.*, 19 Mont. 454, 48 Pac. 778.)

Hansbrough et al. also raise the point that Fotheringham, as ▮ trustee, has not the right to sue in view of the holding of this court in the case of *Streetbeck* v. *Benson*, 107 Mont. 110, 80 Pac. (2d) 861. The facts here are that each of various laborers filed a lien claim for the balance due for wages from the Seven-Up Mining Company. After the liens were filed, Fotheringham and others furnished the money to pay off these claims. The laborers in turn assigned their claims, together with the liens, to Fotheringham, Trustee. He appears in the action to enforce the lien for the benefit of those who advanced the money to pay the laborers. This case is controlled by the case of *Northern Montana Assn. of Credit Men* v. *Hauge*, ante, p. 56, 105 Pac. (2d) 1102, and Fotheringham has the right to enforce the lien as the real party in interest.

Other questions raised in the case have been considered, but we find no other ground for interfering with the findings or conclusions of the trial court, except as already pointed out.

The cause is remanded with directions to modify the judgment in conformity with the views herein stated, and, as thus modified, it will stand affirmed, except as to Stoner and, as to him, a new trial shall be granted for the sole purpose of determining which items are lienable in accordance with the views stated herein. Remittitur forthwith.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and MORRIS concur.

MR. JUSTICE ARNOLD, who concurred in the opinion promulgated on September 20, 1940, retired from office December 25, 1940, and took no part in the reconsideration thereof or the amendments made therein on motion for rehearing.

Rehearing denied March 14, 1941.